## WHITE v. GRISMORE.

1. TRIAL—REQUESTS TO CHARGE—ALTERNATE THEORY—PLEADING—
PROOFS.

Request to charge jury that it might return verdicts based on
the theory of a contract to forbear to contest aunt's will
whereby defendants were obligated to pay to each plaintiff
1/5 of the residue of *a portion of* their aunt's estate was
properly denied where plaintiffs declared on a contract
whereby they claimed 1/5 of the residue of the aunt's
*entire* estate and there was no proof as to the alternate
theory, defendants having denied any contract having been
made at all.

2. CONTRACTS—PROMISE OF INTENDED GIFTS.

Promises indicating a then intention to make gifts are not
enforceable as a contract.

3. TRIAL—REQUESTS TO CHARGE—VARIANCE WITH PLEADINGS AND
EVIDENCE.

Refusal of trial judge to charge jury that alleged agree-
ment by defendants to pay plaintiffs 1/5 of the resi-
due of the entire estate of their aunt was a joint and
several obligation of defendants, permitting a verdict against
either or both defendant sisters, was not error, where no
request so to charge was submitted and it would have been
at variance with plaintiffs' pleadings, proofs and statements
of counsel to have given such an instruction.

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 12 Am Jur, Contracts § 72.
[6] 3 Am Jur, Appeal and Error § 1028.
[7] 58 Am Jur, Witnesses § 621.
[8] Generally as to agreements not to contest wills, see 57 Am Jur,
Wills § 998 *et seq.*
[8] Contract to refrain from contesting will. 55 ALR 811.
Right to settle or compromise will contest, and validity of agree-
ment to induce others to do so. 81 ALR 1187.

4. EVIDENCE—BEST EVIDENCE—RECOLLECTION OF CONTENTS OF LETTER
   —IMPEACHMENT—MATERIALITY.

   Further testimony with reference to letter received by witness,
   a brother of plaintiffs and defendants, which he had re-
   ceived from one of the latter after he testified that such
   letter had stated that plaintiffs had threatened to start
   suits was properly excluded, where witness stated that
   he did not recall specifically what was in the letter and no
   showing was made that such witness had been required
   to produce the original of such letter, no statement of pur-
   pose as to why the contents of the letter was desired, no
   basis laid for use of such contents for impeachment pur-
   poses and its materiality is not shown.

5. TRIAL—CROSS-EXAMINATION—TESTIMONY AS TO MATTERS NOT
   IN ISSUE.

   Comments of trial judge whereby he indicated that cross-
   examination of a witness who was a brother of the plain-
   tiffs and defendants as to character of their father was
   open to objection *held,* not prejudicial, where the character
   of the father was not in issue in the case.

6. EVIDENCE—MATERIALITY—PREJUDICE.

   Introduction in evidence of letter from deceased aunt to father
   of plaintiffs and defendants, wherein the aunt expressed
   some surprise but admitted that he was deserving of com-
   pensation for what he had done in their common interest
   with respect to property in which each had an interest was
   proper, where a foundation for its reception in evidence was
   laid by plaintiffs' pleadings, since, assuming it was im-
   material, it did not prejudice plaintiffs.

7. TRIAL—REPETITION OF TESTIMONY ON REBUTTAL—DISCRETION OF
   COURT.

   The trial court did not abuse his discretion in refusing to
   let plaintiffs repeat their testimony on rebuttal, where the
   matters sought to be gone into had previously been covered
   by witnesses in support of plaintiffs' cases.

8. CONTRACTS—REQUEST TO CHARGE—SETTLEMENT OF WILL CONTEST
   —INSTRUCTIONS.

   Trial court's refusal to charge jury that it was the policy
   of the courts to favor the settlement of controversies arising
   out of the settlement of estates was proper in action in
   circuit court based on alleged contract whereby plaintiffs
   had agreed to forbear contesting aunt's will in return for
   defendants' alleged agreement to give them 1/5 of

such aunt's entire estate, the issue being whether or not
such contract was made.

9. GARNISHMENT—DISMISSAL PENDING APPEAL IN PRINCIPAL CASE—
PREJUDICE—AFFIRMANCE OF JUDGMENT FOR DEFENDANTS.
    Dismissal of writs of garnishment pending appeal from judg-
    ments for defendants in principal case was not prejudicial
    to plaintiffs, where such judgments were later affirmed.

Appeal from Wayne; Miller (Guy A.), J. Sub-
mitted April 10, 1952. (Docket Nos. 35, 36, Calendar
Nos. 45,145, 45,146.)   Decided May 16, 1952.

Separate actions for damages by John White and
Robert White against Mary Grismore and Grace
Sullivan for breach of alleged contract to share pro-
ceeds of estate. Cases tried together. Judgments
for defendants. Plaintiffs appeal. Affirmed.

*Riseman, Lemke & Piotrowski* (*Nicholas Salowich,*
of counsel), for plaintiffs.

*Dahlberg, Simon, Jayne, Woolfenden & Gawne,*
for defendants.

CARR, J. These cases involve the same issues of
law and fact, were tried together in the circuit court,
and on appeal have been submitted here in like man-
ner. The plaintiffs brought their respective actions
claiming the right to recover from the defendants un-
der a contract alleged to have been made between the
parties. Certain material facts involved are not in
dispute. The plaintiffs, their brother David Charles
White, and the defendants are the sons and daugh-
ters of Charles White, who died in September, 1943.
Prior to his death the father and Mrs. Isabelle
Drebes, his sister, were co-owners of certain real
estate in Wayne county which, it appears, had been
inherited by them from their father. Mrs. Drebes

was a resident of the State of California and Mr. White managed the property. Apparently a portion of it was sold during his lifetime and the proceeds divided. Whether the grantors received equal shares of the proceeds is in dispute. The rest of such property was sold by the estate of Charles White after his death, Mrs. Drebes receiving one-half of the amount realized.

Mrs. Drebes died in California in May, 1949. Her nearest relatives were her nephews and nieces. During her final illness the defendant Mrs. Sullivan, with the approval of her brothers and her sister, went to California for the purpose of rendering such assistance to the aunt as might be possible. Shortly after the return of Mrs. Sullivan to Michigan, Mrs. Drebes passed away. She left an estate that was distributed after the payment of taxes and the expenses of the probate proceedings in accordance with the terms of a will that she had executed in January, 1947. In accordance therewith each plaintiff, and their brother, David White, received the sum of $500. The will gave a total of $1,100 to friends and also made specific bequests of jewelry, said legacies and bequests not being in question here. The remainder of the estate was by the will directed to be divided between the defendants in equal shares.

On learning the provisions of their aunt's will the plaintiffs were greatly dissatisfied. It is their claim that they considered going to California for the purpose of investigating the situation and contesting the probating of the will if grounds for such a contest were discovered. It appears that they had expected that Mrs. Drebes would, by will, divide the principal portion of her estate remaining at her death among her nephews and nieces in equal shares. Discussions were had between plaintiffs and the defendants which, as plaintiffs claimed in their declarations and in their testimony on the trial in circuit court, cul-

minated in the making of a contract whereby defendants undertook and promised, in consideration of the plaintiffs' promises to forbear to contest the will of Mrs. Drebes, that all moneys coming to the nephews and nieces from the estate of their aunt would be divided among them in equal shares.

The actions brought by plaintiffs were based on the right to recover on such alleged contract. Defendants by their answers and in their testimony denied that any such contract was made. It was in substance their claim that they did not at any time, either by oral statement or in letters written by them, make any promise or promises to divide the cash assets of the estate coming to them with their brothers in consideration of any promise made by the plaintiffs to forbear to contest the will. On the contrary it was their position that the statements on which plaintiffs relied as the basis for the claim of a contract had reference to the division of that portion of Mrs. Drebes' estate that came from the Detroit property which she and her brother Charles had inherited from their father, that defendants felt that the father, if living, would have wished such division, and that in deference to such wish they indicated to plaintiffs that they would give to each, after deducting certain expenses, enough money so that each niece and nephew, including their brother David, would receive one-fifth of the amount so realized by the estate. It was their position in the trial court, as well on this appeal, that whatever they said to the plaintiffs was merely in the nature of statements of an intention to make gifts, and that there was no consideration of any kind or character moving from the plaintiffs to them in connection with the transaction.

It further appears that payments on the basis suggested by defendants were made by them to their brother David and accepted by him. It may be

noted in passing that the testimony of David White on the trial indicated that he considered such payments to be gifts. Plaintiff Robert White refused a similar tender made by Mrs. Sullivan, and the other plaintiff indicated that he would not accept payments from the defendants on the basis of such payments being gifts made for the purpose of equalizing the amounts received by the parties from that portion of Mrs. Drebes' estate derived by her from the Detroit property.

Plaintiffs' motions for summary judgments were denied, and the cases were brought to trial before a jury. At the conclusion of plaintiffs' proofs defendants moved for directed verdicts which motions were taken under advisement by the trial judge.* They were renewed following the introduction of testimony by defendants and rebuttal proofs by plaintiffs. The trial judge again took them under advisement and submitted the cases to the jury, which returned verdicts for defendants. Plaintiffs' motions for new trials were denied and they have appealed, claiming that errors in the course of the trial were so prejudicial to them as to require reversals of the judgments and the granting of new trials.

As before noted, it was the claim of the plaintiffs in their declarations and in their testimony that defendants entered into a contract with them, in consideration of and in reliance on their promises to forbear to contest the will of Mrs. Drebes, to share with plaintiffs *all* of the assets of the aunt's estate. They had refused to accept from defendants payments intended to bring about an equal participation in the assets of the estate derived from the Detroit property which Mrs. Drebes and Charles White had inherited from their father. Nevertheless the trial court was requested to charge the jury that it

---

* See CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1951 Cum Supp § 27.1461 *et seq.*).—REPORTER.

might return verdicts based on the theory of a contract obligating defendants to pay to each plaintiff one-fifth of the residue of the Detroit property remaining in the estate. The request was denied, and appellants now claim that the trial court was in error in not submitting the cases on the theory that the jury might find that the parties, under the proofs in the cases, had in fact made such a contract. The cases were, in fact, submitted on the basis of plaintiffs' claims as to the existence of a contract and the provisions thereof if made.

There was no error in refusing to submit the cases also on the alternate theory suggested by plaintiffs in their request to charge. There was no proof before the jury justifying a conclusion that a contract was made pertaining solely to the assets in Mrs. Drebes' estate derived from the Detroit property. Plaintiffs did not claim any such agreement, and defendants denied the existence of any contract whatsoever between themselves and the plaintiffs, asserting that statements made by them had reference merely to contemplated gifts to be made to plaintiffs in deference to the supposed wishes of their father. Defendants did not, as the argument of counsel for the appellants seems to assume, admit the existence of a contract based on a consideration obligating them to share with plaintiffs any part or portion of what they had received under the will of their aunt, conceding merely the making of statements indicating a then present intention to make gifts. Promises of such nature are not enforceable. See *Holmes* v. *McDonald,* 119 Mich 563 (75 Am St Rep 430); *Geisel* v. *Burg,* 283 Mich 73; 38 CJS, pp 793, 794. The request to charge in the manner indicated was properly refused.

It is further claimed that the trial judge erred in refusing to charge the jury that verdicts might be returned against either defendant on the theory that

the agreement was joint and several. This question was discussed by court and counsel immediately before the submission of the cases to the jury. The record does not indicate that a specific request to charge on the matter was submitted. Any claim that the jury might have returned verdicts against one of the defendants only is wholly at variance with the declarations and proofs of the plaintiffs and the obvious theory on which the cases were tried. The declarations did not suggest, other than in the titles of the causes, that the actions were "joint and several." The claims of the plaintiffs were clearly set forth in the declaration filed by plaintiff Robert White, as follows:

"Plaintiff further shows unto this court that after several conferences and exchange of letters commencing as of May 27, 1949 and ending on or about July 29, 1949 entered into between the defendants and the plaintiff and his brother John it was agreed by them that the residue of the estate of Isabelle C. Drebes would be divided equally between all the children of Charles D. White and that the plaintiff and his brother should not contest the validity of the will of the late Isabelle C. Drebes or institute any legal proceedings against her estate and that the travel expenses of the defendant Grace Sullivan be deducted therefrom."

During the course of the trial counsel for plaintiffs, in answer to a question of the court with reference to the contract claimed to have been made, said:

"The promise to forbear the contest of the will. That is the contract. That is our contract, that we would forbear the contest of the will, and in consideration therein they offered to divide the property equally in accordance with the understanding that the people had before the death of Mrs. Drebes."

The situation in *Lorimer* v. *Wayne Circuit Judge,* 216 Mich 587, cited by appellants, was materially different than in the case at bar. There the moving parties sought by mandamus to compel the setting aside of the judgment rendered against them in a case in which they had been sued, with others, on a contract. It appears that some of the defendants named in such suit as obligated under the contract were not served with process, others had not appeared, and still others had not pleaded. In seeking the writ of mandamus it was the claim of plaintiffs that the trial court was without jurisdiction to render judgment against them on the ground, among others, that the obligation on which recovery was sought was joint. The declaration averred that the defendants, and each of them, had employed plaintiffs to perform certain services, and afterwards said defendants, and each of them, had agreed to pay therefor. It was held that the language used clearly charged a joint and several indebtedness, emphasis being placed on the words "and each of them."

The allegations in the declaration of Robert White, and the statement of counsel, above quoted, cannot be interpreted except as indicating that the plaintiffs were relying on a contract claimed to have been made by both of the defendants. Shortly before the end of the trial counsel again stated, in answer to a question of the court, that "it is a joint contract." Our examination of the record indicates that at no time during the introduction of the proofs was there any suggestion on the part of plaintiffs or their counsel that the contract on which recovery was sought could be regarded as made by one of the defendants alone. Such theory is not supported by testimony. It is scarcely conceivable that one of the defendants, without the participation of the other, would have entered into a contract with the plaintiffs to pay them out of the proceeds which she might receive

from the estate of the aunt such sums as would give each one-fifth of the assets available for distribution after the payment of the specific legacies and bequests. It is equally inconceivable that one defendant would have undertaken to bind herself to cause her sister to join in the making of such payments. The claim that the trial judge was in error in refusing to permit the jury to consider the return of verdicts against one of the defendants to the exclusion of the other finds no support in the record. It is, in fact, wholly at variance with it.

The brother of the parties to these cases, David Charles White, a retired rear admiral of the United States Navy, was called as a witness on behalf of the defendants. Among other matters, he testified on cross-examination to receiving a letter from Mrs. Sullivan stating that the plaintiffs had threatened to start suits. He was then asked if he recalled what was in that letter, to which a negative answer was made. The witness indicated that he thought that the letter stated why the suits were to be instituted. Further testimony with reference to the contents of the letter was excluded by the trial judge.

Apparently an order had been obtained by counsel for plaintiffs requiring defendants to furnish plaintiffs with copies of letters in their possession from the plaintiffs to either of them, or from either of them to other relatives interested in the estate of Mrs. Drebes. It does not appear that any request had been made of the witness to produce letters in his possession received by him from defendants or from other parties in interest. The ruling excluding further testimony as to the contents of the letter was made on the ground that there was no showing of any attempt whatever to have the original of the letter produced in court. Such was obviously the situation. It may well be doubted that the examination of the witness was proper under the rule as heretofore rec-

ognized by this Court. · *Paul* v. *University Motor* *Sales Co.,* 283 Mich 587.

It may also be noted that the witness stated that he did not recall what was in the letter. In the absence of a specific recollection on his part, testimony as to the contents was open to objection. No statement was made by counsel for plaintiffs as to the purpose of placing before the jury the contents of the letter. Presumably, counsel had in mind that the letter might contain statements against the interest of the writer, or might tend to impeach testimony that she had given. However, when on the witness stand, Mrs. Sullivan was not interrogated with reference to the contents of the letter in question. If counsel's purpose in inquiring about the letter was the impeachment of testimony, it is apparent that no attempt was made to lay a proper foundation therefor. It is equally apparent that statements made by Mrs. Sullivan in the letter to the witness as to the reasons why plaintiffs were threatening to bring suits may not be assumed to be inconsistent with her claims on the trial. The materiality of the contents of the letter is not made to appear in any way. On this record we cannot say that the exclusion of the testimony as to the contents of the letter, assuming that the witness might finally have recalled such, was prejudicial to the plaintiffs. On the contrary, we think that the ruling of which appellants now complain was correct.

Counsel for plaintiffs in cross-examining the witness David C. White inquired if his father was intensely religious and extremely honest. Affirmative replies were given by the witness. The trial court indicated that such cross-examination was open to objection. Appellants claim that the limitation on the pursuit of the cross-examination and the remarks of the trial court were prejudicial to them. Justification of the testimony is attempted on the ground that

defendants through the introduction of a letter written by Mrs. Drebes to Charles White had impugned the character of the latter. An examination of such letter does not justify any such claim. Reference was made therein to the fact that Mr. White in dividing the proceeds received from certain property owned by himself and Mrs. Drebes had retained considerably more than he had forwarded to her. The letter expressed some surprise, but admitted that Mr. White had done much work for several years and was deserving of compensation. Apparently Mrs. Drebes was somewhat disappointed at the amount she received, but there was nothing in the letter that could reasonably be construed as reflecting in any way on the character of the father of the plaintiffs. Such character was not in issue in the case. Under the circumstances the comments of the trial judge did not constitute error prejudicial to plaintiffs.

Complaint is also made, based on the admission of the letter above referred to, which apparently was written in January, 1937. Plaintiffs alleged in their declarations that Mrs. Drebes and Charles White owned certain real estate, that for many years the property was managed by Mr. White without charge, and that it was understood between Charles White and Mrs. Drebes that the latter "would leave her property in equal shares to the children of Charles B. White." The testimony of plaintiff Robert White indicates that he believed that his father and his aunt shared equally the proceeds received from the Detroit property sold before Mr. White's death. The record suggests that plaintiffs relied to some extent in support of their claim that they should share equally with defendants in the entire estate of their aunt on an agreement of such purport between her and their father. If there was any arrangement of that kind, the record fails to show it. The letter was

apparently received in evidence, after having been first excluded by the trial judge, on the theory that it tended to throw some light on the relations of the parties. It is doubtful that it was material to any issue actually involved in the determination of the question whether the contract on which the plaintiffs based their actions was in fact made. However, it must be said that plaintiffs by their pleadings and their testimony laid some foundation at least for receiving the exhibit in evidence. Such being the case, they are not now in position to complain. In any event the introduction of the letter, assuming its lack of materiality, did not prejudice the plaintiffs.

After defendants had rested their case, plaintiff John White was recalled to the stand ostensibly for rebuttal testimony. After having been asked certain questions, the trial judge interposed on the ground that the matters had previously been covered in the testimony of the witness in support of plaintiffs' cases. Certain further questions were asked and answered, and Robert White was also recalled, presumably as a rebuttal witness. Appellants now complain that the refusal of the trial court to permit John White to repeat testimony that he had previously given was prejudicial error. With such claim we are unable to agree. The record discloses that both plaintiffs testified at length in support of their claims. The trial judge was not guilty of any abuse of discretion in refusing to permit plaintiffs to repeat their claims after the defendants had rested.

It is also argued that the trial court erred in refusing to charge the jury that it is the policy of the law to favor the settlement of controversies arising out of the distribution of estates. The instant cases do not involve probate proceedings. Rather, the question was whether the parties to this litigation had entered into a contract, as claimed by plaintiffs,

whereby defendants were bound to make certain payments to each of them. The nature of the controversy did not call for a statement of the policy of the courts or of the law. The function of the jury was to determine the facts from the proofs introduced by the parties. A consideration of the entire charge of the court indicates that the issues involved were clearly and definitely stated. The claim of error based on the refusal to charge as requested is without merit.

The judgments were filed November 14, 1950, and the orders denying the motions for new trials were entered January 3, 1951. Thereafter a motion was made on behalf of defendants to dismiss writs of garnishment that had been taken out by plaintiffs at the time their suits were instituted. Such motion was granted, and it is claimed on behalf of appellants that the order of dismissal was improper because of the pending appeal of the cases to this Court. In view of the conclusions reached on the matters above discussed, it is unnecessary to consider the claim of error based on the dismissal of the garnishment proceedings. Plaintiffs were not prejudiced thereby.

The judgment is affirmed, with costs to appellees.

NORTH, C. J., and DETHMERS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.