## GRAHAM v. INSKEEP.

1. AUTOMOBILES—NEGLIGENCE—ASSURED CLEAR DISTANCE—INSTRUC-
   TIONS.
   > Instruction to jury in automobile negligence case which gave
   > substantially the instruction on the assured clear distance rule
   > requested by plaintiff, but in trial judge's own language,
   > *held*, not error under circumstances of case (CLS 1961, § 257-
   > .627).

2. TRIAL—REOPENING CASE—DISCRETION OF COURT.
   > The reopening of a case after the evidence is completed is com-
   > mitted to the sound discretion of the trial court.

3. SAME—REOPENING CASE—DISCRETION OF COURT—CUMULATIVE TES-
   TIMONY.
   > Refusal of trial court to reopen case of plaintiffs for taking
   > of testimony of defendant's medical examiner *held*, not abuse
   > of discretion, when plaintiffs had become aware of contents of
   > examiner's report after resting, and moved to reopen to call
   > examiner as a witness then, where his testimony would be
   > merely cumulative, and plaintiffs failed to call him for rebuttal
   > after some of plaintiffs' evidence had been contradicted by
   > evidence introduced by defendant.

4. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—DISCRETION OF COURT.
   > The granting of a new trial on the grounds of newly-discovered
   > evidence is largely a matter of discretion for the trial court.

5. SAME—NEWLY-DISCOVERED EVIDENCE.
   > To entitle one to a new trial on the ground of newly-discovered
   > evidence, the moving party must show (1) that the evidence

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 529.
[2, 3] 53 Am Jur, Trial § 123.
[4] 39 Am Jur, New Trial § 157.
[5] 39 Am Jur, New Trial § 158 *et seq.*
[6, 7] 39 Am Jur, New Trial § 167.

itself and not merely its materiality is newly discovered; (2) that it is not merely cumulative; (3) that it is such as to render a different result probable on retrial; (4) that the party could not with reasonable diligence have discovered and produced it at the trial.

6. SAME—NEWLY-DISCOVERED EVIDENCE—IMPEACHMENT.
   Generally, a new trial will not be granted if the effect of newly-discovered evidence is merely to impeach.

7. SAME—DISCRETION OF COURT—IMPEACHMENT.
   Trial judge's denial of new trial because of his determination that newly-discovered evidence tending to impeach defendant's testimony given at trial was not such as to render a different result probable on retrial, *held,* not an abuse of discretion in negligence case where trial judge had tried the case and heard the testimony which was claimed to be newly-discovered impeaching evidence and also heard the defendant's denial of such testimony.

Appeal from Kent; Hoffius (Stuart), J.   Submitted Division 3 June 7, 1966, at Grand Rapids. (Docket Nos. 765, 766.)   Decided January 10, 1967.

Declaration by Michael S. Graham, by his next friend Dorothy M. Graham, against Madelene W. Inskeep for personal injuries received in an automobile accident.   Derivative action by Dorothy M. Graham arising from same accident.   Verdict and judgment for defendant in both cases.   Plaintiffs appeal.   Affirmed.

*Smith & Haughey,* for plaintiffs.

*Hillman, Baxter & Hammond,* for defendant.

HOLBROOK, P. J.   These are automobile-pedestrian negligence actions brought by Dorothy M. Graham individually and as next friend for her minor son, Michael S. Graham, as plaintiffs, against Madelene

W. Inskeep, defendant. The cases were consolidated for trial before a circuit court jury. Verdicts of no cause of action were rendered in both cases.

Plaintiffs moved for a new trial and upon its denial have appealed to this Court raising three questions for review: (1) Did the trial court err in its instructions relating to the "assured clear distance ahead" statute?* (2) Did the trial court abuse its discretion in refusing to allow plaintiffs to reopen their proofs after resting their case to put in the testimony of Dr. Marshall Pattullo? (3) Whether the testimony of Barbara Williams and Wayne Williams was newly-discovered evidence and whether the court abused its discretion in refusing to grant a new trial based thereon.

The pertinent facts relating to the first question appear to be as follows: The accident happened in the evening at about 8 o'clock p.m., March 23, 1962, on Plainfield avenue at the T-intersection of that street with Palmer street in the city of Grand Rapids. Plainfield was a main thoroughfare running in a general north and south direction and was intersected by Palmer from the west.

Michael Graham, age 12, and three other young companions were on the east side of Plainfield and the south side of Palmer street. They desired to go to a drugstore located on the west side of Plainfield. The three other boys preceded Michael in crossing the street and reached the center of the street which had been marked with two yellow wide lines with a white line in the middle thereof indicating that no passing across said yellow lines was allowed by vehicles traveling north or south. Plainfield had four lanes of traffic, two for northbound and two for southbound with no parking on either

---

* See CLS 1961, § 257.627 (Stat Ann 1960 Rev § 7.2327).—RE-PORTER.

side of the street. Mrs. Inskeep, the defendant, was driving a Simca automobile from the north in a southerly direction approaching the scene. These facts are not disputed.

Plaintiffs claim that Michael was behind the three boys in crossing the street because he was writing names on the sidewalk with lipstick he had found and also had been reading a comic strip that was with some bubble gum he had purchased. When he started to cross the street at the pedestrian marked crosswalk, the other boys were either at the center of the street or in the process of crossing the west side thereof. When Michael reached the center where he claims he stopped on the yellow lines because of the traffic from the north his three companions had completed or nearly completed the crossing. Michael testified that his attention was drawn to a green station wagon full of children approaching from the north, that this vehicle was coming very close to him and one of his companions shouted a warning to him. At this time he stepped back and after the station wagon had passed he was struck. He stated that he did not see the defendant's vehicle and did not know what vehicle struck him. It was plaintiffs' claim adduced from witnesses that defendant was driving her vehicle in a southerly direction in the lane closest to the center line and had just passed a vehicle that turned to the west on Palmer street, that her left headlamp was not operative and that she drove upon or across the yellow center line and struck the plaintiff, severely breaking his left leg below the knee. This injury required considerable medical, surgical, and hospital attention, and the left leg is 1.6 centimeters shorter than the right leg. Further surgery at a later time was advised by plaintiffs' surgeon.

The defendant testified that she and her son had been to church at her daughter's wedding and that

they were on their way to the wedding reception when the accident happened. She and her son both testified that she was driving south on Plainfield in the lane closest to the center line for several blocks and following a car, that as she approached the intersection in question she saw three boys standing in the center of Plainfield avenue about 30 to 40 feet south of the pedestrian crosswalk, that she slowed down, and after she passed them Michael Graham ran into the side of her automobile. They also testified that defendant did not pass any vehicle that turned to the west on Palmer street, that at all times she had been traveling within the lane markers and that both her headlamps were properly operating.

The undisputed testimony was established that the left side of defendant's vehicle was damaged behind the left front fender, the side mirror displaced, and a dent was in the left front bumper. The latter, defendant attributed to another event.

The theories of the parties as to how the accident happened are in direct conflict. Plaintiff claims that Michael was on or to the east of the center line when defendant in passing another vehicle drove over or across said center line and struck him, and that defendant's left headlamp was not operating. Defendant claims she was driving south on Plainfield avenue in the lane closest to the center of the street, and that after she passed the three boys who were on the yellow lines in the center of the street, Michael Graham ran into the side of her automobile. She claims that she did not pass a car that turned west on Palmer street and that at no time did she drive on or across the yellow lines dividing the street. It is her further claim that on previous occasions Michael had stated he had walked into the side of her car, but on reflection determined, and so

testified that he was struck while standing in a stopped position.

The critical fact presented to the jury for determination was the location of the accident. Did plaintiff minor cross the yellow lines and step into the side of defendant's vehicle or did defendant drive on or across the yellow lines and strike the plaintiff minor?

Plaintiffs claim error in that the court failed to properly instruct the jury as to defendant's duty to stop within the assured clear distance ahead. Plaintiff's request No. 10 to charge in this regard was as follows:

"If you find that defendant did not have her automobile under control and drove it at such speed that she was unable to stop it within the assured clear distance ahead, that is in the range of her lights, and prevent the accident, then she would be guilty of negligence. Every person operating an automobile must use that degree of care which a reasonable person of ordinary prudence would exercise under the same or similar conditions. The defendant was bound to exercise care commensurate with the dangers naturally incident to the use of her vehicle. In some situations greater care is required than others, depending upon all the circumstances which then exist, and a person is required to use such care as is commensurate with the weather conditions, the time of day or night, the frequency or infrequency of travel, the traffic on the highway, and all the surrounding circumstances and conditions attending the time and place of the accident. She was bound to anticipate that she might meet other vehicles or pedestrians at any point in the street, and she was under a duty to keep a proper lookout for them and keep her automobile under such control as would enable her to avoid a collision with any other person using proper care and caution."

The trial judge in part gave the following instructions:

"It is generally the duty of the driver of any automobile to maintain a reasonable and proper lookout to see what is plainly there to be seen and to give it due heed and, before proceeding, from a suitable observation of conditions then and there existing, to form a reasonable belief that it is safe to proceed. I instruct you, therefore, that the defendant, Madelene Inskeep, had the duty to notice persons in the street.    *   *   *

"In this particular case it was her duty to keep a proper lookout. And if you find that a reasonably prudent person, keeping a proper lookout, would have seen Michael Graham under the circumstances then existing, then you would find that she should have seen him also and she should have done what a reasonably careful person should have done under the same or similar circumstances.    *   *   *

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed and no person shall drive any vehicle upon a highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead. *   *   *

"Any person driving a vehicle shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway, and any other condition then existing, so in addition to the speed limit it is still necessary for Madelene Inskeep to drive her automobile at a speed which any reasonable person would find reasonable and proper, having due regard to the traffic, surface, and width of the highway."

Although the trial judge did not give the requested instruction in the wordage proffered, he did not err under the facts in this case by using his own language and giving substantially the in-

struction requested. *Wedge* v. *Zbikowski* (1961), 362 Mich 466. See, also, *Fowler* v. *Hoffman* (1875), 31 Mich 215; *Fraser* v. *Jennison* (1879), 42 Mich 206; *Ferries* v. *Copco Steel & Engineering Co.* (1955), 344 Mich 345; *Schattilly* v. *Yonker* (1957), 347 Mich 660; *Henning* v. *Riegler Water Well Drilling, Inc.* (1960), 360 Mich 288.

The second issue questions the exercise of judicial discretion in the court's refusal to reopen the case after plaintiff had rested. The plaintiff desired to call Dr. Marshall Pattullo who had examined the plaintiff minor, for defendant a few weeks prior to trial. The doctor's statement had been received in the morning by defendant's counsel just prior to plaintiffs' resting their case. At the noon recess a copy of the statement was given to plaintiffs' counsel. Prior to plaintiffs' motion in the afternoon to reopen, plaintiffs' counsel had not informed the court that he had not received a copy of the report from defendant's doctor. The doctor's report stated in part: "On the basis of the history and the X-ray findings I think this boy probably suffered a severe bumper-type fracture of the left tibia and I suspect that an anterior compartment syndrome ensued."

Plaintiffs evidently desired to call the doctor to fortify their position that the front of defendant's automobile struck plaintiff-minor. However, at this point in the trial there was no evidence contrary to plaintiffs' theory in the case. Thereafter defendant and her son testified that plaintiff-minor ran into the side of defendant's automobile. Dr. Pattullo's testimony if admissible would then have been proper rebuttal. Plaintiffs' counsel has verified the statement by his action in placing Michael back on the stand as a rebuttal witness, to show how the accident happened by direct testimony whereas the doctor's testimony would have been expert opinion

on the same subject. The record discloses the following:

"*Q*. Did you run into the side of Mrs. Inskeep's car?

"*A*. No.

"*Q*. What were you doing when you were struck?

"*A*. Standing on the double yellow line."

It is well settled that the reopening of a case after the evidence is completed is committed to the sound discretion of the trial court. *Conover* v. *Hecker* (1947), 317 Mich 285.

In view of the fact that plaintiffs' counsel did not offer Dr. Pattullo as a rebuttal witness and because the cumulative nature of his testimony at the time it was desired to be offered, *i.e.*, in the plaintiffs' main case, we conclude that the court did not abuse its discretion in denying plaintiffs' motion to reopen their case. *White* v. *Grismore* (1952), 333 Mich 568.

The third issue asserts an abuse of discretion on the part of the trial judge in refusing to grant a new trial based on plaintiffs' claimed newly-discovered evidence.

Subsequent to the trial, Mrs. Graham, one of the plaintiffs, was informed by a Mrs. Barbara Williams that she and her husband had overheard the defendant make certain statements which would constitute an admission of the facts which she denied at the trial. These statements were allegedly made by the defendant at a large union dinner held in January of 1963 which had been attended by the defendant and Mr. and Mrs. Williams. It is unclear how far away the defendant was from Mr. and Mrs. Williams. However, it was at least by the space of one or two persons. The defendant was purportedly speaking to a lady friend and not to the Williamses at the time. The

affidavit of Mrs. Williams was taken and this evidence became *inter alia* a part of plaintiffs' motion for a new trial. Mrs. Inskeep, the defendant, and Mrs. Williams testified on the hearing of the motion.

The granting of a new trial on grounds of "newly-discovered" evidence is largely a matter of discretion for the trial court. *Luckhurst* v. *Schroeder* (1914), 183 Mich 487; *Attorney General, ex rel. Commissioner of Insurance,* v. *Lapeer Farmers' Mutual Fire Insurance Association* (1950), 327 Mich 333; *Reardon* v. *Buck* (1952), 335 Mich 318.

To entitle one to a new trial on the grounds of newly-discovered evidence the moving party must show (1) that the evidence itself and not merely its materiality is newly discovered; (2) that it is not merely cumulative; (3) that it is such as to render a different result probable on retrial; (4) that the party could not with reasonable diligence have discovered and produced it at the trial. *Canfield* v. *City of Jackson* (1897), 112 Mich 120; *Marion* v. *Savin* (1946), 315 Mich 448; *Reardon,* v. *Buck, supra; Hainault* v. *Vincent* (1961), 365 Mich 370.

Two of the four necessary factors appear to be present in this case—the evidence is itself new and there is no lack of diligence shown. However, the presence of the two other factors, of whether the evidence was cumulative and whether it would tend to render a different result probable on a retrial presents proper questions.

Although appellants are correct in their statement that the evidence proffered would be impeaching evidence, it is generally held that a new trial will not be granted if the "newly-discovered" evidence is merely to impeach. *Luckhurst* v. *Schroeder, supra; Kube* v. *Neuenfeldt* (1958), 353 Mich 74.

In the case of *Pollock* v. *Farmers Mutual Fire Insurance Company* (1957), 349 Mich 12, the court held that it was not error to deny a new trial mo-

tion by defendant in an action on a policy affording coverage for a loss by fire or explosion, predicated upon allegedly newly-discovered evidence that one of plaintiffs had made a statement after the action to the effect that the collapse of one side of the barn had been due to excess weight of oats stored therein, because this was only cumulative evidence, unlikely to result in a different verdict.

Since the trial judge was in closest contact with all concerned, had tried the case, had heard Mrs. Williams' testimony which was the claimed newly-discovered evidence and Mrs. Inskeep's denial, he would without question be in the best position to determine if the new testimony would tend to produce a probable different result on a retrial. We also note that the lady with whom defendant was conversing at the time was available and yet was not called by plaintiffs nor did plaintiffs obtain an affidavit or a deposition from her. We conclude under the facts of this case, that the judge's determination that the newly-discovered evidence was not such as to render a different result probable on a retrial and his denial of plaintiffs' motion for a new trial was not an abuse of discretion.

Affirmed. Costs to appellees.

BURNS and FITZGERALD, JJ., concurred.