MARILYN Kelly, J.
(concurring). Although I am willing to agree to remand this case to the trial court for application and resolution of the Cress test, I believe this Court should do that itself. Hence, I write separately to explain why.
First, this appeal has lingered unresolved in the state appellate courts for the past six years. This Court already considered and remanded it once before during that period. The parties have now diligently, thoroughly, and thoughtfully briefed and argued the question whether defendant should be afforded a new trial. Not only is it appropriate for us to give them an answer, there is no impediment to our doing so.
Second, the rationale for a remand to the trial court rests in large part on the theory that the judge there has the benefit of having tried the case. The trial judge would normally have superior knowledge of the facts that were presented at trial. He or she would apply that knowledge to the question of whether a different result *323 is probable on retrial were the newly discovered evidence to be admitted. But in this case, the trial judge has retired from the bench, and this Court’s remand will go to a judge who in all likelihood knows nothing of the facts of this case.
Third, in granting defendant’s application for leave to appeal, we specifically ordered the parties to address whether the newly discovered evidence warrants a new trial. Hence, it follows that we should attempt to resolve the issue.
Lastly, by resolving the issue, the Court can establish precedent on the question of when newly discovered impeachment evidence can satisfy the fourth Cress factor.
Nonetheless, I fully join the majority opinion. I write separately to definitively answer the question on which we granted defendant’s application for leave to appeal: I would hold that the newly discovered evidence constitutes material exculpatory evidence and that it makes a different result probable on retrial, satisfying the fourth Cress factor. Accordingly, my preference would be to vacate defendant’s convictions and remand the case for a new trial.
I. ANALYSIS
As discussed in my majority opinion, granting a new trial on the basis of newly discovered evidence requires a defendant to show that (1) the evidence itself, not merely its materiality, is newly discovered, (2) the newly discovered evidence is not cumulative, (3) using reasonable diligence, the party could not have discovered and produced the evidence at trial, and (4) the new evidence makes a different result probable on retrial.[1] Because the *324 prosecution correctly conceded that defendant has satisfied the first three factors, the only remaining question is whether the newly discovered evidence makes a different result probable on retrial. I would answer that question in the affirmative.[2]
A. ADMISSIBILITY OF THE NEWLY DISCOVERED EVIDENCE
Merely presenting a court with newly discovered evidence does not automatically support the grant of a new trial. Rather, to potentially effect a different result on retrial and thereby satisfy the fourth Cress factor, the newly discovered evidence must be admissible. Thus, a question prefatory to the trial court’s resolution of whether defendant’s newly discovered evidence would make a different result probable on retrial is whether that evidence could be admissible. The Court of Appeals majority hinted that it could be admissible in limited circumstances, namely, to show that the complainant admitted she had lied about being kidnapped and about being raped in California. It also noted that the California police reports con *325 tain hearsay,[3] which is generally not admissible under MRE 802.1 conclude that, at the very least, the reports have evidentiary value and contain information that could be admitted if properly presented.
First, on retrial, if the complainant were to deny having ever made a false police report of rape, the fact that she did so in California in 2001 could be admissible. Under MRE 613, this inconsistency would be relevant to her credibility. If she were to testify that she made the false report, it would also severely impeach her credibility. The veracity of her testimony was vital to defendant’s convictions.
Second, the newly discovered evidence is relevant. In this regard, MRE 401 defines “relevant evidence” as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”
MRE 404(b)(1) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.
Accordingly, parts of the newly discovered evidence could be admissible to show that the complainant had a motive for falsely reporting a sexual assault. It could show that she engaged in a scheme consisting of falsely *326 accusing various individuals of raping her. The police reports show that the complainant reported to the police, family, or friends that she had been raped by at least eight different people on at least nine separate occasions.[4] Thus, MRE 404(b) could be yet another basis for the introduction of information contained in the California police reports.[5]
Third, the newly discovered evidence has evidentiary value because, on retrial, it may permit defendant access to the complainant’s medical, counseling, and psychological records. This could include records from the online rape support group that the complainant participated in before the alleged rape by defendant in this case. The trial court denied defendant’s motion for discovery of these records at trial, and the Court of Appeals affirmed this decision,[6] citing MCR 6.201(C)(2)[7] *327 and People v Stanaway.[8]
Stanaway requires a defendant to establish “a reasonable probability that the privileged records are likely to contain material information necessary to his defense” before an in camera review is conducted pursuant to MCR. 6.201(C)(2) to ascertain whether those records contain evidence that is “reasonably necessary to the defense ... .”[9] It appears that the newly discovered evidence could satisfy the court rule and Stanaway.[10]
The rape-shield statute[11] does not apply to this evidence because it does not preclude impeaching a complainant with the complainant’s prior false accusation. The statute provides that evidence of specific instances of a complainant’s sexual conduct, opinion evidence of a *328 complainant’s sexual conduct, and reputation evidence of a complainant’s sexual conduct are generally inadmissible. However, in People v Jackson, we held that testimony concerning prior false sexual-assault allegations does not implicate the rape-shield statute.[12] And as the Court explained in People v Hackett,
[t]he fact that the Legislature has determined that evidence of sexual conduct is not admissible as character evidence to prove consensual conduct or for general impeachment purposes is not however a declaration that evidence of sexual conduct is never admissible. We recognize that in certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant’s constitutional right to confrontation. For example, where the defendant proffers evidence of a complainant’s prior sexual conduct for the narrow purpose of showing the complaining witness’ bias, this would almost always be material and should be admitted. Moreover in certain circumstances, evidence of a complainant’s sexual conduct may also be probative of a complainant’s ulterior motive for making a false charge. Additionally, the defendant should be permitted to show that the complainant has made false accusations of rape in the past.[13]
*329 Thus, at a minimum, on retrial, the rape-shield statute would not preclude admission of the complainant’s admittedly false accusation of rape made to the Bakersfield Police.
In addition, Hackett discussed another type of evidence of sexual conduct that, if otherwise admissible, does not run afoul of the rape-shield statute: evidence of a complainant’s sexual conduct probative of a complainant’s ulterior motive for making a false charge.[14] This exception may also be germane because evidence of the complainant’s past false accusation and purported childhood sexual abuse could arguably suggest an underlying motive for making a false charge.[15]
In light of these evidentiary, statutory, and judicially crafted rules, if defendant properly offered the evidence, he could introduce the complainant’s prior false rape claim. Potentially, he could also attempt to show that she made numerous reports of rape over the years involving many different individuals. Finally, under Stanaway and MCR 2.601(C)(2), the newly discovered evidence might permit defendant access to the complainant’s medical, counseling, and psychological *330 records on retrial, which were denied to him at trial. I note that this is not an exhaustive evaluation of the potential admissibility of the newly discovered evidence.[16]
B. EXCULPATORY CONNECTION
For newly discovered impeachment evidence to satisfy Cress, there must be an exculpatory connection between the evidence and the offense, even if the new evidence does not contradict a witness’s specific testimony. Alternatively, the evidence must totally undermine critical inculpatory evidence.[17] Hence, in evaluating this issue, a court must identify a factual link *331 between the heart of a key witness’s testimony at trial and the newly discovered evidence. I would hold that a clear exculpatory connection exists between the newly discovered evidence in this case and the heart of the complainant’s testimony at trial. This is because the new evidence calls into question whether the alleged crime she testified about ever occurred.
The new evidence impeaches complainant’s most incriminating testimony. Defendant’s convictions were predicated on complainant’s allegation that defendant sexually assaulted her. Her credibility was central to the case. But the newly discovered evidence casts serious doubt on her credibility, not just in general, but with respect to the most crucial evidence at trial: her testimony that she was brutally assaulted in a commercial parking lot in the middle of the day and that defendant perpetrated the attack.
The newly discovered police reports are highly significant because they render complainant’s allegations in this case more difficult to believe. Relevant in this respect is the final version of complainant’s story documented in the California police reports, the details of which bear a remarkable resemblance to this case. Both involved allegations of rape in a parking lot in the middle of the day. In both cases, no one reported seeing an assault. In both cases, no definitive physical evidence of a sexual assault was obtained because complainant did not seek immediate medical treatment. And in both cases, the complainant alleged that her attacker penetrated her with a foreign object, his finger, and then his penis.
In sum, the newly discovered evidence creates a serious question about whether any sexual assault occurred at all in this case. It discloses a history of at least one, and as many as nine, prior false sexual- *332 assault allegations. And it raises questions about the complainant’s veracity as pertains to her testimony inculpating defendant. As we noted in People v Barbara, new impeachment evidence is “particularly significant when. . . the only evidence that an offense was ever committed was largely based on the testimony of [an] individual[] whose credibility might be put into question . . . .”[18] For these reasons, I would hold that the newly discovered evidence contains an exculpatory connection, i.e. “a factual link between the heart of the [complainant’s] testimony at trial and the new evidence . . . suggesting] directly that the defendant was convicted wrongly.”[19]
C. A DIFFERENT RESULT IS PROBABLE ON RETRIAL
In light of these considerations, I believe that a different result is probable on retrial. First, the prosecution’s case against defendant was not strong. Several months had elapsed from the date of the alleged rape by the time the complainant told her husband about it. Thirteen months elapsed before the complainant went to the police claiming that someone had raped her. Initially, she told both her husband and the police a different story — that she had been beaten. No direct physical evidence linked defendant to the crime. There was no DNA evidence and the complainant did not seek *333 medical care until any such evidence could no longer be identified. Indeed, although the complainant admitted that she knew the clothing she wore during the alleged attack could be tested for DNA evidence, she threw it away before it could be tested.
The complainant identified someone other than defendant as her assailant at the police lineup. She did not tell two of the physicians who examined her after the alleged attack that she had been raped. There were no eyewitnesses to the alleged attack, which supposedly occurred in broad daylight in a crowded parking lot. Surveillance videotape of the Meijer parking lot did not reveal any evidence of criminal activity. Nor did it reveal that defendant or the complainant was even present in the parking lot on the day of the alleged assault.[20]
Second, the only evidence offered to corroborate the complainant’s allegation that she suffered physical injuries that could have been signs of a rape was testimony from Dr. Thabit Bahhur and Dr. Deborah Russell. These are two of the physicians who examined her. Bahhur indicated that he observed abrasions on the outside and inside of the complainant’s vagina, as well as on her cervix. Although he testified that the abrasions were consistent with a sexual assault, he specifically indicated that he could not rule out other causes of the injuries.
Similarly, Russell observed abrasions on the complainant’s labia. She also reported bruises on the com *334 plainant’s arms and legs. But Russell testified that the complainant’s vaginal area was “normal” at the time of her exam. Thus, the testimony offered by Bahhur and Russell did not establish that the complainant had been sexually assaulted, much less that defendant was her attacker.
Third, during closing argument, the prosecutor presented the complainant’s allegations as setting forth a slam-dunk case, stating, “There’s really, really no question as to whether or not this assault happened. There’s really no question.” In light of the newly discovered evidence, this is not an accurate characterization of the complainant’s allegations. The newly discovered evidence creates a serious question about whether any assault occurred at all in this case. Moreover, it discloses a history of at least one, and possibly as many as nine, false sexual-assault allegations. It raises questions about the complainant’s veracity. I believe that at a new trial, it is probable that a jury would find this evidence sufficiently compelling to acquit defendant.
In reaching this conclusion, I do not overlook the evidence presented at trial corroborating defendant’s convictions that was not entirely independent of the complainant’s credibility. This evidence includes the fact that defendant worked at the Meijer store where the alleged assault occurred. It also includes the complainant’s identification of defendant in a photo array. It includes defendant’s lie to the police about not having owned or pawned a ring fitting the complainant’s description of her attacker’s ring.[21] And it includes the *335 fact that defendant had a skull tattoo on his right arm. Furthermore, defendant altered his appearance before his corporeal lineup. However, given the circumstantial nature of this evidence, the likelihood that a jury would acquit defendant after being presented with the newly discovered evidence is great enough to warrant a new trial.
Given these considerations, I believe defendant has set forth a sufficient basis for a new trial. As we noted in Barbara, new impeachment evidence is “particularly significant when . . . the only evidence that an offense was ever committed was largely based on the testimony of [an] individúalo whose credibility might be put into question .. . ,”[22] That is, I believe there is a factual link between the heart of the complainant’s testimony at trial and the newly discovered evidence that suggests that defendant might have been wrongly convicted.[23] I cannot say that a different result will certainly occur on retrial. But the newly discovered evidence undermines my confidence in the complainant’s testimony, and I believe a different result is probable on retrial.
As Judge GLEICHER aptly concluded in her dissent in this case:
In summary, the prosecutor presented the [the complainant] as an ordinary wife and mother, engaged in a routine shopping trip, whom defendant senselessly and brutally attacked. The jury remained ignorant of other highly relevant facts, including the victim’s prior participation in an online rape support group, which likely would have engendered reasonable doubt regarding her delayed and inconsistent description of the attack in the Meijer’s parking lot. The impeachment evidence supplied by the California police reports, and the further information likely *336 to flow directly from additional investigation triggered by those reports, more probably than not renders the [complainant’s] testimony incredible.[24]
I agree. Whether a jury would believe the complainant’s version of events in light of the newly discovered evidence remains an open question. I simply note the gravity of the evidence and would hold that it makes a different result probable on retrial.
II. THE TRIAL COURT’S RULING
The majority opinion correctly holds that the trial court abused its discretion by denying defendant’s motion for relief from the judgment because it ruled that impeachment evidence “cannot form the basis for . . . granting] ... a new trial.”
I also believe that the trial court gave insufficient weight to the potential effect of the newly discovered evidence when considering defendant’s motion for new trial. Instead, it commented on the testimony that went to the jury:
Finally, this Court takes strong exception to defense counsel’s version of the facts that came out at trial for the jury’s consideration as contained in his Motion for New Trial. The statement of facts as contained in the Prosecutor’s brief on this motion is much closer to my remembrance of the trial evidence. My point in commenting on this is that there was ample and strong competent evidence for the jury to convict Defendant independent of [the complainant’s] testimony.
This analysis failed to recognize that the complainant’s testimony was essential to defendant’s convictions. And *337 it ignores the powerful effect of the newly discovered evidence on the complainant’s credibility. Accordingly, I would further hold that the trial court abused its discretion by failing to properly weigh the newly discovered evidence.
III. CONCLUSION
I would hold that the newly discovered evidence constitutes material exculpatory evidence and satisfies the fourth Cress factor, making a different result probable on retrial. Accordingly, my preference would be to vacate defendant’s convictions and remand this case to the trial court for a new trial.

 People v Cress, 468 Mich 678, 692; 664 NW2d 174 (2003).

 In Graham v Inskeep, 5 Mich App 514, 524; 147 NW2d 436 (1967), the Court of Appeals opined that trial courts are generally in the best position to determine whether newly discovered evidence would tend to produce a different result on retrial. Graham, reasoned that trial courts are in closest contact with the parties. They have tried the case, have heard the relevant witnesses’ testimony, and are therefore in the best position to evaluate the proper weight to be afforded newly discovered evidence. However, the judge who presided over defendant’s triad and denied defendant’s motion for relief from the judgment has retired. Thus, Graham’s reasoning has no applicability here. There is no legitimate reason to remand this case to the trial court for assignment to a new judge unfamiliar with its lengthy history, factual background, and legal intricacies. Thus, the dissent’s claim that “[t]he trial court possesses a superior ability to assess in the first instance the strength and importance of the newly discovered evidence in relation to the evidence presented at trial,” post at 363, is unfounded.

 MRE 801(c) defines “hearsay” as “a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.”

 These instances include (1) an alleged rape in Michigan when the complainant was 6 years old, (2) an alleged sexual assault by a female member of the complainant’s church congregation when the complainant was between 10 and 12 years old, (3) alleged sexual assaults by the complainant’s brother when she was a child, (4) alleged sexual assaults by the complainant’s father when she was a child, (5) the alleged rape by defendant in this case, (6) alleged rapes in California that her husband and brother were “in on,” (7) the alleged rape that occurred in a California parking lot, (8) the recanted allegation of rape at a Colorado hotel, and (9) an alleged gang rape committed by her brother and his friends.

 The dissent argues, post at 352 n 34, that I have developed an exculpatory defense theory that the complainant engaged in a “scheme” to make false rape accusations. Not so. I have simply explained why, under MRE 404(b), evidence of the complainant’s admittedly false accusations, as well as the other alleged assaults unearthed in the California police reports, might be admissible as part of a scheme, pattern, or system of making those allegations. My analysis in this regard tracks the language of MRE 404(b).

 People v Grissom, unpublished opinion per curiam of the Court of Appeals, issued November 18, 2004 (Docket No. 251427), p 4.

 MCR 6.201(C)(2) provides, “If a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records.”

 People v Stanaway, 446 Mich 643, 677; 521 NW2d 557 (1994).

 Id. at 649, 684.

 Stanaway considered a situation in which “[t]he defense theory is that the claimant is a troubled, maladjusted [person] whose past trauma has caused her to make a false accusation . . . .” Id. at 682. The defendant asserted “a good-faith belief” and provided factual support for his in camera discovery motion that “the complainant suffered sexual abuse . . . before this allegation of abuse, the nonresolution of which produced a false accusation . ...” Id. The Court concluded that in those circumstances, the defendant might have met the requisite standard for an in camera review. Id. at 683.
To be clear, I would not hold that the trial court must conduct an in camera review of the complainant’s psychological records. Rather, consistently with Stanaway and MCR 6.201(C)(2), it may conduct a review if there is a reasonable probability that the privileged records are likely to contain information necessary to the defense.
Similarly, I do not rely on the complainant’s psychological records in assessing whether defendant has met his burden of showing that a different result is probable on retrial. I simply note how the newly discovered evidence might make possible the admission of those records on remand.

 MCL 750.520j.

 People v Jackson, 477 Mich 1019 (2004).

 People v Hackett, 421 Mich 338, 348; 365 NW2d 120 (1984) (emphasis added; citations omitted). The dispositive question regarding the timing of a past false rape accusation and its admissibility is not when a false rape allegation occurred relative to the case at bar. Rather, given a defendant’s Sixth Amendment right to confrontation, it is sufficient that any prior false allegation occurred before a complainant testifies at trial. To hold otherwise would lead to unjust results.
Consider the following hypothetical situations. In the first situation, the complainant alleges that defendant A raped her. While the case against A is pending, the complainant makes other rape allegations against defendants B, C, and D. Then she recants her allegations against A, B, and C. It is undisputed that defendant D may cross-examine the complainant regarding her recanted allegations against A, B, and C.
*329 In the second situation, the complainant alleges that defendant A raped her. While the case against A is pending, the complainant makes other rape allegations against defendants B, C, and D that she later recants. Under the dissent’s erroneous view, defendant A would not be permitted to cross-examine the complainant regarding the false rape allegations against defendants B, C, and D. This would be because he was unfortunate enough to have been accused first. Such a result is untenable.

 Id.

 See White v Coplan, 399 F3d 18, 24 (CA 1, 2005) (“If the prior accusations were false, it suggests a pattern and a pattern suggests an underlying motive . ...”); see also Stanaway, 446 Mich at 682 (recognizing that a complainant’s unresolved prior sexual abuse could produce a false accusation).

 Without any supporting analysis, consideration of our rules of evidence, or application of governing caselaw, the dissent states as an ipse dixit that the newly discovered evidence might not be admissible on retrial. By contrast, I have carefully outlined how at least portions of the newly discovered evidence could be admissible notwithstanding the fact that hearsay is involved.
Furthermore, the dissent claims that on remand, the trial court should consider only admissible evidence when determining whether the newly discovered evidence satisfies Cress. This is incorrect. MCR 6.507 provides that the parties may “expand the record by including any additional materials [the court] deems relevant to the decision on the merits of the motion. The expanded record may include letters, affidavits, documents, [and] exhibits . ...”
The dissent also indulges in considerable speculation about evidence the prosecution might seek to enter into the record on remand to defeat the grant of a new trial. I have avoided such speculation in part because it tends to lead the legal analysis far astray for no useful or appropriate purpose. And it is unavailing. For example, the dissent speculates that the prosecution may show that the complainant’s false California assault claims were the product of post-traumatic stress disorder caused by defendant’s alleged assault. But, of course, defendant might show that the complainant’s claim against him in this case was the product of post-traumatic stress disorder caused by sexual assaults she suffered as a child.

 United States v Quiles, 618 F3d 383, 392 (CA 3, 2010).

 People v Barbara, 400 Mich 352, 363-364; 255 NW2d 171 (1977).

 Quiles, 618 F3d at 392. The dissent argues, post at 350, that “the reports do not contradict any evidence presented at trial, let alone material evidence” and that there is no exculpatory connection between the new evidence and the complainant’s testimony at trial. This argument misses the point. The exculpatory connection between the new evidence in this case and the complainant’s testimony at trial is that the new evidence tends to show defendant’s innocence. It does that by showing that the crime the complainant accused him of might never have occurred.

 The dissent reiterates the prosecution’s explanation for why the surveillance tape does not corroborate the complainant’s allegations. But it is based on utter conjecture. There was no evidence that defendant ever watched, much less studied, the Meijer store surveillance system. Similarly, the dissent reasons from only one premise: that the assault definitively occurred and that the details the complainant testified about were factual.

 However, even this evidence raises questions about the complainant’s veracity. The complainant testified that she observed someone who she thought was her assailant wearing the ring more than one year after defendant had pawned it. Thus, on retrial and in light of defendant’s new evidence, a jury might find the complainant less credible if it believes that she was wrong about seeing defendant and the ring.

 Barbara, 400 Mich at 363-364.

 See Quiles, 618 F3d at 392.

 People v Grissom, unpublished opinion per curiam of the Court of Appeals, issued October 29, 2009 (Docket No. 274148), p 15 (Gleicher, J., dissenting).