PEOPLE *v*. WERNER.

1. RAPE—EVIDENCE—COMPLAINT—REMOTENESS.
   In a prosecution for rape on a 17-year old girl, the admission of testimony by a neighbor of complaint made to her by prosecutrix about 6 weeks after, although remote, *held*, within the discretion of the trial court, in view of the fact that she was a stranger in the land, unable to speak English, and that her mother, in whom she would naturally have confided, was an accomplice in the commission of the crime.

2. SAME—CORROBORATING TESTIMONY—EVIDENCE—ADMISSIBILITY.
   Where the testimony of a physician that the hymen of

On right of accused to show unchastity of prosecutrix in statutory rape, see note in 48 L. R. A. (N. S.) 269.
As to admissibility for purpose of impeachment in action for sexual offenses, of evidence that prosecuting witness has made similar charges against other persons, see note in 41 L. R. A. (N. S.) 216.

prosecutrix had been ruptured, probably by intercourse, was in corroboration of her testimony as to the commission of the offense, it was error for the trial court to exclude testimony of admissions claimed to have been made by her to her mother and defendant that she had had intercourse with another man.

3. SAME—OBSCENE MATTER PROPERLY EXCLUDED.

Where prosecutrix denied the writing of certain obscene matter in both French and German on the page of a book, it was not error for the trial court to deny defendant permission to show that she had so admitted, where the language of the writing cannot be said to indicate a mania for accusing men of rape or that it is of a nature to indicate such a morbid condition of mind or body as justified its reception.

4. SAME—WITNESSES—CROSS-EXAMINATION—APPEAL AND ERROR.

Where a witness, on re-examination, was asked whether she did not remember saying to another witness, "No wonder the girl wants to get out," the answer, "I don't know, I don't believe so," even if inadmissible, *held*, not so prejudicial as to warrant reversal.

5. WITNESSES—HUSBAND AND WIFE—WIFE AS A VOLUNTARY WITNESS SUBJECT TO SAME RULES AS OTHER WITNESSES.

Where a wife voluntarily becomes a witness for her husband in a criminal prosecution, she is subject to the same rules of cross-examination and impeachment as apply to all other witnesses.

6. SAME—TESTIMONY OF WIFE FOR HUSBAND MAY BE IMPEACHED.

Where defendant's wife, called as a witness in his behalf in a prosecution for rape, testified that she never saw any questionable relations between defendant and the girl, and on cross-examination denied that she told a neighbor that he was planning on leaving her and taking the girl, that he was using the girl all the time, it was not error, for the purpose of affecting her credibility as a witness, to allow testimony by said neighbor to the effect that she had made such statements.

Error to Oakland; Gillespie (Glenn C.), J. Submitted October 13, 1922. (Docket No. 163.) Decided December 5, 1922.

Frank Werner was convicted of rape, and sentenced to imprisonment for not less than 15 nor more than 30 years in the State prison at Marquette.     Reversed.

*A. J. Seltzer* and *Doty & Cram* (*George E. Nichols*, of counsel), for appellant.

*Merlin Wiley*, Attorney General, and *A. Floyd Blakeslee*, Prosecuting Attorney, for the people.

SHARPE, J.     Defendant was convicted of the crime of rape upon Elizabeth Nax, the 17-year-old illegitimate daughter of his former wife.     The mother was also informed against as an accessory and likewise convicted.     Elizabeth was born in Germany.     Her mother left that country when her daughter was five years old, leaving her in the care of friends and relatives.     She met and married defendant in Arizona. They were subsequently divorced, but soon thereafter left that State under an arrangement that they should live together as husband and wife but hold themselves out as brother and sister, she assuming the name of Anna Berger.     They came to Ferndale in Oakland county in 1920 and purchased a small property, the deed running to him as a single man and to her as a widow.     After the war the mother wrote to Elizabeth and a correspondence followed, resulting in the sending of passage money and the daughter's arrival in Ferndale in February, 1921.     It is her claim that defendant attempted to ravish her soon after she reached the home and that with the connivance and aid of her mother he did so on the night of February 14, 1921.

1. She made no direct complaint until March 31st following, although she claims to have said to a neighbor woman soon after February 14th that she "wanted to be taken to a Christian home."     Mrs. Beaumon, to whom she sent a note asking that she

be "brought away by the police," was permitted to testify to the fact that complaint was made to her. While remote, in view of the fact that she was a stranger in a strange land, unable to speak our language, and that her mother, in whom she would naturally have confided, was, as claimed by her, an accomplice in the commission of the crime, we think it was within the discretion of the trial court to admit it. *People* v. *Gage*, 62 Mich. 271 (4 Am. St. Rep. 854) ; *People* v. *Duncan*, 104 Mich. 460.

2. On April 13th, complainant was examined by Dr. Morris at the request of the prosecuting attorney. He found that her hymen had been ruptured and expressed his opinion that she had "probably had intercourse," while admitting that it might have been due to other causes. The defense then sought to show by cross-examination of the complainant, and also by offer of admissions made by her to her mother and defendant, that she had had sexual intercourse with men in Germany. The court, after listening to extended argument, ruled that the cross-examination would be permitted but that he would not permit her answers to be contradicted by such admissions. On this ruling counsel declined to cross-examine. We feel constrained to hold that the court was in error in so ruling. The proof admitted was in corroboration of her testimony. From it the jury might have found that the rupture was caused by an act of sexual intercourse. It was clearly permissible for the defense to meet this by evidence, either direct or in the nature of admissions made by her, that she had theretofore had such intercourse with another man. When the prosecutrix is above the age of consent, the rule is thus stated in 33 Cyc. pp. 1480, 1481:

"Specific acts with others than defendant may be shown to rebut corroborating circumstances, as when the woman is pregnant or has miscarried or given

birth to a child, or where she was infected with
venereal disease, or where a physician has testified
that the hymen was ruptured."

See, also, *People* v. *Craig,* 116 Mich. 388; *State* v.
*Appley,* 48 L. R. A. (N. S.) 269 (25 N. D. 298, 141
N. W. 740), and note thereto; *Richardson* v. *State,*
100 Miss. 514 (56 South. 454). Counsel for the
prosecution urge that we should not reverse the con-
viction for this error unless it is apparent that the
defendant was prejudiced thereby. We cannot on
this record say affirmatively that he was not. The
only corroborative evidence offered was that of the
doctor and the complaint made by the prosecutrix
about a month after the date of the alleged offense.

3. On the cross-examination of Elizabeth, she was
shown a small book, on one page of which appeared
some obscene matter, written in both the French and
German languages. She denied that she had written
the matter therein. Counsel for the defendant sought
to show that she had so admitted to the defendant,
but was refused permission to do so. Much latitude
is allowed in permitting evidence to be introduced
which may affect the credibility of a complainant in this
class of cases. The fact that she has made similar
charges against others may be shown. *People* v.
*Evans,* 72 Mich. 367; *People* v. *Wilson,* 170 Mich. 669
(41 L. R. A. [N. S.] 216). We are impressed, how-
ever, that the language of the writing cannot be said
to indicate a mania for accusing men of rape or that
it is of a nature to indicate such a morbid condition
of mind or body as justified its reception.

4. Mrs. Bees was called as a witness by the prosecu-
tion. Her testimony on cross-examination was ap-
parently disappointing. On re-examination counsel
asked her:

"Don't you remember of saying to Mrs. Beaumon
'no wonder the girl wants to get out?'"

to which she answered, over objection, "I don't know, I don't believe so." The answer, even if inadmissible, was not so prejudicial as to warrant a reversal.

Anna Werner, the wife of defendant, called by him as a witness, testified:

"I never saw any questionable relations between Frank and the girl while in Ferndale."

On cross-examination, she testified:

"*Q.* Do you remember telling Mrs. Beaumon that Frank was planning on taking the girl and leaving you?

"*A.* No—not that kind of a statement, I never made that kind of a statement.

"*Q.* And that he was using the girl all of the time?

"*A.* No, sir, no."

In rebuttal, Mrs. Beaumon was called and permitted to testify that Anna had made such statements to her. The court carefully instructed the jury, both at the time it was received and afterwards in the general charge, that this testimony was received solely for the purpose of affecting the credibility of the witness. We find no error in this. When the wife voluntarily became a witness for her husband, her testimony was subject to the same rules of cross-examination and impeachment as applied to all other witnesses. *People* v. *Toner*, 217 Mich. 640.

The conviction and sentence are set aside and a new trial ordered. The defendant is remanded to the custody of the sheriff of Oakland county to await such trial.

Fellows, C. J., and Wiest, McDonald, Clark, Bird, and Steere, JJ., concurred. Moore, J., did not sit.