PEOPLE v HACKETT

PEOPLE v PAQUETTE

Docket Nos. 67291, 69249. Argued January 4, 1984 (Calendar Nos. 2, 3).—Decided December 28, 1984. Released February 1, 1985.

Charles R. Hackett was convicted in the Grand Traverse Circuit Court, Charles M. Forster, J., of assault with intent to commit sexual penetration. Prior to trial, the court denied the defendant's motion to admit reputation evidence of the complainant's sexual conduct and of specific instances of prior sexual conduct. The Court of Appeals, D. F. Walsh, P.J., and R. B. Burns and D. E. Holbrook, Jr., JJ., reversed in an unpublished opinion per curiam (Docket No. 51427). The people appeal.

James Paquette was convicted in the Tuscola Circuit Court, Martin E. Clements, J., of first-degree criminal sexual conduct. During trial, the court excluded reputation evidence of the complainant's sexual conduct on the grounds that it was irrelevant to the issue of consent and that it was prejudicial to the prosecution's case. The Court of Appeals, MacKenzie, P.J., and M. F. Cavanagh and D. F. Walsh, JJ., affirmed (Docket No. 54814). The defendant appeals.

In an opinion by Justice Boyle, joined by Chief Justice Williams and Justices Ryan and Brickley, and by Justice Cavanagh in *Hackett* only, the Supreme Court *held*:

Application of the rape-shield statute to exclude reputation evidence of the complainants' sexual conduct under the facts of the cases did not violate the defendants' right to confrontation.

1. The rape-shield statute and parallel provisions in the Rules of Evidence are policy determinations that sexual conduct or reputation as evidence of character and for impeach-

REFERENCES FOR POINTS IN HEADNOTES

[1-6] 29 Am Jur 2d, Evidence § 342.

65 Am Jur 2d, Rape § 82 *et seq.*

Constitutionality of "rape shield" statute restricting use of evidence of victim's sexual experiences. 1 ALR4th 283.

Modern status of admissibility, in forcible rape prosecution, of complainant's general reputation for unchastity. 95 ALR3d 1181.

Modern status of admissibility, in forcible rape prosecution, of complainant's prior sexual acts. 94 ALR3d 257.

ment, while perhaps logically relevant, is not legally relevant. Neither the Confrontation Clause of the Sixth Amendment nor due process confer an unlimited right upon a defendant to have all relevant evidence admitted or to cross-examine on any subject. A defendant is guaranteed a reasonable opportunity by the Sixth Amendment to test the truth of a witness' testimony.

2. By enacting a general exclusionary rule, the Legislature recognized that, in the vast majority of cases, evidence of a rape victim's prior sexual conduct with others, and sexual reputation, when offered to prove that the conduct at issue was consensual or for general impeachment is inadmissible. However, it was not intended that evidence of sexual conduct never be admissible. In certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation. Where a defendant proffers evidence of a complainant's prior sexual conduct for the narrow purpose of showing the complaining witness' bias, the evidence would almost always be material and should be admitted. In certain circumstances, evidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge. Additionally, a defendant should be permitted to show that the complainant has made false accusations of rape in the past.

3. The determination of admissibility of reputation evidence of a rape victim is entrusted to the sound discretion of the trial court. The defendant is obligated initially to make an offer of proof as to the proposed evidence and to demonstrate its relevance to the purpose for which it is sought to be admitted. Unless there is a sufficient showing of relevancy in the defendant's offer of proof, the trial court must deny the motion. If there is a sufficient offer of proof as to a defendant's constitutional right to confrontation, as distinct simply from use of sexual conduct as evidence of character or for impeachment, the trial court must order an *in camera* evidentiary hearing to determine the admissibility of such evidence in light of the constitutional inquiry. At the hearing, the trial court has the responsibility to restrict the scope of cross-examination to prevent questions which would harass, annoy, or humiliate the victim and to guard against mere fishing expeditions. The trial court continues to possess the discretionary power to exclude relevant evidence offered for any purpose where its probative value is substantially outweighed by the risks of unfair prejudice, confusion of issues, or misleading the jury. The hearing procedure best accomplishes the required balancing. A hearing

held outside the presence of the jury to determine admissibility promotes the state's interests in protecting the privacy rights of the alleged rape victim while at the same time safeguards the defendant's right to a fair trial. Furthermore, this procedure establishes a record of the evidence for appellate review.

4. In these cases, no *in camera* evidentiary hearing was conducted. However, because the record established on the defendant's offer of proof in each case is adequate for purposes of appellate review, the cases need not be remanded for such a hearing. In *Hackett,* the defendant was not denied his right to confrontation. The proffered evidence was irrelevant. In addition, the defendant was given the opportunity to present the jury with evidence of the complainant's past homosexual encounter with a prisoner of the same race as the defendant as tending to show his consent in the encounter at issue. In *Paquette,* the proffered evidence did not meet a minimal threshold of relevancy. Exclusion of the evidence did not deprive the defendant his right of confrontation.

Justice Kavanagh, concurring, stated that evidence of a person's prior consensual sexual conduct is not admissible in a prosecution of criminal sexual conduct for the purpose of proving that the person consented to sexual activity on the occasion giving rise to a charge of criminal sexual conduct; it is admissible, however, if it involved the defendant or if it is offered to show the source or origin of semen, pregnancy, or disease.

1. The criminal sexual conduct act absolutely prohibits the admission of evidence of sexual conduct between a victim of criminal sexual conduct and any person other than the defendant except to show the origin of semen, pregnancy, or disease, but only if it is material to a fact at issue in the case and if it is more probative than prejudicial. Such categorical exclusion is not warranted simply because the excluded evidence is relevant in only a few cases. The relevancy of whole classes of evidence cannot be determined *a priori* without knowing the purpose for which it is offered. Not until the issues are framed at trial can the relevance of such evidence be known. The statute represents a legislative determination that in most cases such evidence is irrelevant. It cannot be said categorically that the prejudicial effect of prior sexual conduct always substantially outweighs its probative value.

2. A more sophisticated approach to admission of evidence of prior sexual conduct of a victim is embodied in the Michigan Rules of Evidence. The rule, in providing for admission of evidence of a victim's past sexual conduct with the defendant

or where offered for the purpose of showing the source or origin of semen, pregnancy, or disease, focuses on the purpose for which the evidence is offered. Such an approach provides a more realistic accommodation of the rights of defendants and accomplishes the salutary goals of the statute without sacrificing the right to present relevant evidence. Accordingly, the Rule of Evidence supersedes the provisions of the act for admission of evidence of a victim's prior sexual conduct.

*Hackett,* reversed.

*Paquette,* affirmed.

Justice Levin, dissenting, stated that the exclusion of evidence of the complainants' prior sexual history in these cases cannot be justified as a means of protecting the complainants from brutal or harassing cross-examination. In both cases, the defendants were prepared to prove the complainants' prior sexual history with testimony of other witnesses. Nor can the exclusion of the proffered evidence be justified on the ground that it will protect the complainants from exposure of embarrassing or humiliating prior sexual history to a spouse, relatives, friends, or the general public. The nature of a jury trial is such that when potential evidence is offered, it becomes a matter of public record. The defendant has an absolute right to make an offer of proof.

Generally, all relevant evidence is admissible. Evidence that demonstrates only prior sexual experience is generally irrelevant and is properly excluded. In these cases, however, the people seek to exclude the evidence not because it is irrelevant or offensive, but because the jury might misuse it. If truly irrelevant and offensive, the people probably would not be harmed by its admission because the defendant, by offering harassing evidence, would lose the jury. In *Hackett,* the proffered evidence was relevant to rebut an assumption and inference by the jury that a white man would not solicit or consent to an act of sodomy by a black man. In *Paquette,* the evidence was relevant to rebut an assumption and inference by the jury that a married, pregnant woman does not seek to engage in casual sexual relations. In addition, the proffered evidence of the complainant's statement that she was not obtaining sexual satisfaction from her husband is not evidence of prior sexual conduct and is not within the terms of the rape victim shield law and is relevant as tending to make it more probable that the complainant consented to sexual activity than it would be without such evidence.

114 Mich App 773; 319 NW2d 390 (1982) affirmed.

OPINION OF THE COURT

1. RAPE — CRIMINAL SEXUAL CONDUCT — EVIDENCE OF PRIOR SEXUAL CONDUCT.

Generally, evidence of a rape victim's prior sexual conduct or reputation, when offered to prove consent or for general impeachment is inadmissible; however, admission of such evidence may be required where offered to preserve a defendant's right to confrontation, such as to show a complaining witness' bias, ulterior motive for making a false charge, or prior false accusations of rape (MCL 750.520j; MSA 28.788[10]; MRE 404).

2. RAPE — CRIMINAL SEXUAL CONDUCT — EVIDENCE OF PRIOR SEXUAL CONDUCT.

The admissibility of evidence of the reputation of a rape victim is within the discretion of the trial court only where the defendant's right to confrontation is implicated; upon a showing by the defendant that the evidence offered is relevant for the preservation of the defendant's right to confrontation, as distinct from evidence of character or for impeachment, the court must order a hearing *in camera* to determine admissibility in which the scope of cross-examination is restricted to prevent questions that would harass, annoy, or humiliate the victim and to guard against mere fishing expeditions; during the hearing, the court retains its power to exclude relevant evidence where its probative value is substantially outweighed by the risks of unfair prejudice, confusion of issues, or misleading the jury (MCL 750.520j; MSA 28.788[10]; MRE 404).

CONCURRING OPINION BY KAVANAGH, J.

3. RAPE — CRIMINAL SEXUAL CONDUCT — EVIDENCE OF PRIOR SEXUAL CONDUCT.

*Evidence of a person's prior consensual sexual conduct is not admissible in a prosecution of criminal sexual conduct for the purpose of proving that the person consented to sexual activity on the occasion giving rise to a charge of criminal sexual conduct; it is admissible, however, if it involved the defendant or if it is offered to show the source or origin of semen, pregnancy, or disease (MRE 404[a][3]).*

4. RAPE — CRIMINAL SEXUAL CONDUCT — EVIDENCE OF PRIOR SEXUAL CONDUCT.

*The absolute prohibition of the criminal sexual conduct act against the admission of evidence of sexual conduct between a victim of criminal sexual conduct and any person other than the defendant except to show the origin of semen, pregnancy, or disease, but only if it is material to a fact at issue in the case and if it is more probative than prejudicial, is not warranted*

*simply because the excluded evidence is relevant in only a few cases; the relevancy of whole classes of evidence cannot be determined* a priori *without knowing the purpose for which it is offered; not until the issues are framed at trial can the relevance of such evidence be known (MCL 750.520j[1]; MSA 28.788[10][1]).*

5. RAPE — CRIMINAL SEXUAL CONDUCT — EVIDENCE OF PRIOR SEXUAL CONDUCT.

*The Rule of Evidence which provides for the admission of evidence of past sexual conduct of a victim of criminal sexual conduct if it involved the defendant or where it is offered for the purpose of showing the source or origin of semen, pregnancy, or disease supersedes the provision for admission of such evidence in the criminal sexual conduct act because, by focusing on the purpose for which the evidence is offered, it provides a more realistic accommodation of the rights of defendants and accomplishes the salutary goals of the statute without sacrificing the right to present relevant evidence (MCL 750.520j[1]; MSA 28.788[10][1]; MRE 404[a][3]).*

DISSENTING OPINION BY LEVIN, J.

6. RAPE — CRIMINAL SEXUAL CONDUCT — EVIDENCE OF PRIOR SEXUAL CONDUCT.

*Exclusion of relevant evidence of a complainant's prior sexual history cannot be justified as a means of protecting the complainant from brutal or harassing cross-examination where the defendant offers to prove the history through testimony of witnesses other than the complainant or on the ground that the evidence will protect the complainant from exposure of embarrassing or humiliating prior sexual history to a spouse, relatives, friends, or the general public; the nature of a jury trial is such that potential evidence offered is a matter of public record (MCL 750.520j; MSA 28.788[10]).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. Foresman,* Prosecuting Attorney, in *Hackett,* and *G. Scott Stermer,* Prosecuting Attorney, in *Paquette,* and *Michael A. Nickerson,* Assistant Attorney General, for the people.

*Graff & Hunt* (by *Rex O. Graff, Jr.)* for defendant Hackett.

*Mason & Mason* (by *Michael A. Mason)* for defendant Paquette.

BOYLE, J. We granted leave to consider the constitutionality of the rape-shield statute, MCL 750.520j; MSA 28.788(10), as applied in these two cases. We hold that application of the statute in the cases at bar did not violate defendant's procedural or substantive rights. We affirm the judgment of the Court of Appeals in *Paquette* and reverse in *Hackett.*

I

Defendants in both cases challenge the trial court's application of the rape-shield statute, MCL 750.520j(1); MSA 28.788(10)(1), in excluding evidence of the victim's prior sexual conduct with persons other than the defendant as violative of their Sixth Amendment right of confrontation and cross-examination.

The same constitutional attack against this statute was recently addressed by this Court in *People v Arenda,* 416 Mich 1; 330 NW2d 814 (1982), where we upheld the validity of the statute on its face and as applied under the facts of that case. In determining the statute's facial constitutionality, the majority stated:

"The right to confront and cross-examine is not without limits. It does not include a right to cross-examine on irrelevant *issues.* It may bow to accommodate other legitimate interests in the criminal trial process, see *Mancusi [v Stubbs,* 408 US 204; 92 S Ct 2308; 33 L Ed 2d 293 (1972)], and other social interests, see *United States v Nixon,* 418 US 683; 94 S Ct 3090; 41 L Ed 2d 1039 (1974).

\* \* \*

"The rape-shield law, with certain specific exceptions, was designed to exclude evidence of the victim's sexual conduct with persons other than defendant. Although such evidence was admissible at common law in rela-

tion to certain issues, this practice has repeatedly been drawn into question. The courts, with increasing frequency, have recognized the minimal relevance of this evidence, see Anno: *Modern status of admissibility, in statutory rape prosecution, of complainant's prior sexual acts or general reputation for unchastity,* 90 ALR3d 1300, and Anno: *Modern status of admissibility, in forcible rape prosecution, of complainant's prior sexual acts,* 94 ALR3d 257.

"The prohibitions contained in the rape-shield law represent a legislative determination that, in most cases, such evidence is irrelevant. This determination does not lack a rational basis and is not unreasonable. In fact, it is consistent with the results reached by the judiciary in resolving this issue, see *State ex rel Pope v Mohave Superior Court,* 113 Ariz 22; 545 P2d 946 (1976).

"The prohibitions in the law are also a reflection of the legislative determination that inquiries into sex histories, even when minimally relevant, carry a danger of unfairly prejudicing and misleading the jury. Avoidance of these dangers is a legitimate interest in the criminal trial process, see MRE 403. The prohibition indirectly furthers the same interests by removing unnecessary deterrents to the reporting and prosecution of crimes.

"At the same time, the prohibitions protect legitimate expectations of privacy. Although this interest may not be as compelling as those mentioned above, it is entitled to consideration, see *Branzburg v Hayes,* 408 US 665; 92 S Ct 2646; 33 L Ed 2d 626 (1972).

"The interests protected and furthered by the rape-shield law are significant ones. Given the minimal relevance of such evidence in most cases, the prohibitions do not deny or significantly diminish defendant's right of confrontation." (Emphasis in original.) *People v Arenda, supra,* pp 8-11.

In *Arenda,* defendant sought to admit evidence of the eight-year-old victim's possible sexual conduct with others to explain the victim's ability to describe the sexual acts that allegedly occurred

and to dispel any inference that this ability resulted from experiences with the defendant. Balancing the potential prejudicial nature of this evidence, in view of the legislative purposes behind the rape-shield law, against the minimal probative value of the evidence, the Court found that the application of the rape-shield law in precluding such evidence did not infringe on defendant's right of confrontation. The Court noted that other means were available by which the defendant could cross-examine the minor victim as to his ability to describe the alleged conduct. The Court, however, left for future case-by-case determinations the question whether under different sets of facts the rape-shield statute's prohibitions would be unconstitutional as applied. *Id.,* p 13. The proper method by which such a determination would be made by the courts was not addressed by the majority opinion.

## II

We are here faced with the task of determining the constitutional application of the rape-shield statute in two different factual circumstances. Before deciding this question, however, we find it necessary to further explicate our decision in *Arenda.*

The statute and its parallel provisions in the Michigan Rules of Evidence, MRE 404(a)(3), constitute a policy determination, that sexual conduct or reputation as evidence of character and for impeachment, while perhaps logically relevant, is not legally relevant. McCormick, Evidence (1st ed), § 155. The protection of inquiry into privileged communication, the preclusion of hearsay, and the limitation of prior bad act evidence, MRE 404(b), are familiar examples of instances in which the

admissibility of probative evidence is restricted because of a competing and superior policy. Indeed, the preclusion of specific acts of conduct, reputation or opinion as circumstantial evidence that the person whose character is sought to be shown engaged in the same conduct at the time in question was not received at common law because of its potential for prejudice, time consumption, and distraction of the factfinder from the issues. McCormick, p 325. Stated otherwise, neither the Sixth Amendment Confrontation Clause, nor due process, confers on a defendant an unlimited right to admit all relevant evidence or cross-examine on any subject. See *Dutton v Evans,* 400 US 74; 91 S Ct 210; 27 L Ed 2d 213 (1970). *Cf. People v Hayes,* 421 Mich 271; 364 NW2d 635 (1984).

It is equally clear that while the extent of cross-examination is within the discretion of the trial court there is a dimension of the Confrontation Clause that guarantees to defendant a reasonable opportunity to test the truth of a witness' testimony. *Alford v United States,* 282 US 687; 51 S Ct 218; 75 L Ed 624 (1931).[1]

By enacting a general exclusionary rule, the Legislature recognized that in the vast majority of cases, evidence of a rape victim's prior sexual

---

[1] Implicit in our holding in *Arenda* that the rape-shield statute was constitutional on its face was the presumption that the Legislature intended in enacting this statute that it not conflict with constitutional requirements. See *People v McQuillan,* 392 Mich 511, 536; 221 NW2d 569 (1974). Prior to enactment of the statute, *Davis v Alaska,* 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974), and *Alford v United States, supra,* had both held that a defendant must have some opportunity to show bias on the part of a prosecution witness and a long line of Michigan authority in accord with that of other state courts, held that interest or bias of a witness in a criminal case is material and may be proved, *People v Field,* 290 Mich 173; 287 NW 422 (1939); Wigmore, Evidence (2d ed), § 1368. Given this background, we consider it unlikely that either the Legislature or the drafters of the Michigan Rules of Evidence intended to "scuttle entirely" the evidentiary availability of cross-examination for bias, *Luce v United States,* 469 US —; 105 S Ct 460; 83 L Ed 2d 443 (1984).

conduct with others, and sexual reputation, when offered to prove that the conduct at issue was consensual or for general impeachment is inadmissible. *People v Arenda, supra,* 416 Mich 10. The first purpose is simply a variation of character evidence as circumstantial evidence of conduct. The second is a collateral matter bearing only on general credibility as to which it has been held that cross-examination may be denied, *United States v Cardillo,* 316 F2d 606 (CA 2, 1963). The fact that the Legislature has determined that evidence of sexual conduct is not admissible as character evidence to prove consensual conduct or for general impeachment purposes is not however a declaration that evidence of sexual conduct is never admissible. We recognize that in certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation. For example, where the defendant proffers evidence of a complainant's prior sexual conduct for the narrow purpose of showing the complaining witness' bias, this would almost always be material and should be admitted. *Commonwealth v Joyce,* 382 Mass 222; 415 NE2d 181, 185-186 (1981); see also *Davis v Alaska,* 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974). Moreover in certain circumstances, evidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge. *State v Jalo,* 27 Or App 845; 557 P2d 1359 (1976); *State v Howard,* 121 NH 53; 426 A2d 457 (1981). Additionally, the defendant should be permitted to show that the complainant has made false accusations of rape in the past. *People v Werner,* 221 Mich 123, 127; 190 NW 652 (1922); *People v Mikula,* 84 Mich App 108, 115-116; 269

NW2d 195 (1978); *State ex rel Pope v Mohave Superior Court, supra,* 113 Ariz 29.

The determination of admissibility is entrusted to the sound discretion of the trial court. In exercising its discretion, the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation.

## III

The procedure to be employed by the trial court in evaluating the admissibility of evidence of the complainant's prior sexual conduct is found in the rape-shield statute's provision for *in camera* hearings. The relevant provision reads as follows:

"(2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. *The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).* If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1)." MCL 750.520j(2); MSA 28.788(10)(2). (Emphasis added.)

Whether we construe this provision to permit the extension of *in camera* hearings to include consideration of evidence outside the scope of subsection (1) where a defendant's confrontation right

has been implicated,[2] or whether we ground the broadened scope of such hearings on this Court's constitutional authority to establish rules of practice and procedure,[3] we conclude that the hearing procedure will best accomplish the required balancing. A hearing held outside the presence of the jury to determine admissibility promotes the state's interests in protecting the privacy rights of the alleged rape victim while at the same time safeguards the defendant's right to a fair trial. Furthermore, this procedure establishes a record of the evidence for appellate review of the trial court's ruling.

The defendant is obligated initially to make an offer of proof as to the proposed evidence and to demonstrate its relevance to the purpose for which it is sought to be admitted. Unless there is a sufficient showing of relevancy in the defendant's offer of proof, the trial court will deny the motion. If there is a sufficient offer of proof as to a defendant's constitutional right to confrontation, as distinct simply from use of sexual conduct as evidence of character or for impeachment, the trial court shall order an *in camera* evidentiary hearing to determine the admissibility of such evidence in light of the constitutional inquiry previously stated. At this hearing, the trial court has, as always, the responsibility to restrict the scope of cross-examination to prevent questions which would harass, annoy, or humiliate sexual assault victims and to guard against mere fishing expedi-

---

[2] Other states with analogous rape-shield statutes have similarly interpreted their respective statutes to provide for an *in camera* evidentiary hearing to afford the defendant an opportunity to offer evidence of a complainant's prior sexual conduct with third persons where it is constitutionally required. *State v Howard, supra,* 121 NH 59; *State v McCoy,* 274 SC 70, 71; 261 SE2d 159 (1979); *State v Jalo, supra,* 27 Or App 857 (Fort, J., *concurring in part and dissenting in part*).

[3] Const 1963, art 6, § 5.

tions. *Alford v United States, supra,* 282 US 694. Moreover, the trial court continues to possess the discretionary power to exclude relevant evidence offered for any purpose where its probative value is substantially outweighed by the risks of unfair prejudice, confusion of issues, or misleading the jury. See MRE 403; *People v DerMartzex,* 390 Mich 410, 415; 213 NW2d 97 (1973); *People v Oliphant,* 399 Mich 472, 489-490; 250 NW2d 433 (1976). We again emphasize that in ruling on the admissibility of the proffered evidence, the trial court should rule against the admission of evidence of a complainant's prior sexual conduct with third persons unless that ruling would unduly infringe on the defendant's constitutional right to confrontation.

## IV

In the two cases at bar, there was no *in camera* evidentiary hearing conducted. However, because the record established on the defendant's offer of proof in each case is adequate for purposes of appellate review, we need not remand these cases for such a hearing to be held. We therefore examine each case separately under the constitutional standard set forth herein.

A. *Hackett*

Prior to trial, defendant made an offer of proof to admit evidence of complainant's reputation for homosexuality for the dual purposes of impeaching his credibility and as bearing on the defense of consent. In addition, defendant sought to introduce specific instances of the complainant's prior homosexual conduct with prisoners of the same race as defendant to circumvent the inference that it would be improbable that a white male prisoner would consent to sodomy by a black male prisoner.

On appeal, defendant argues, in addition to the purposes advanced at the trial level, that the proffered evidence of complainant's homosexuality was relevant to show his bias and motive to get back at the defendant. Because these purposes were not specified in defendant's offer of proof, they are not properly preserved for our review. MRE 103(a)(2); *People v Arenda, supra,* 416 Mich 14.

As to the proffered evidence of the complainant's reputation for homosexual unchastity to impeach his credibility as a witness, we observe generally that there is no logical nexus between a complainant's reputation for unchastity, whether it involves heterosexual or homosexual activity, and the character trait for truthfulness or untruthfulness. See *People v Williams,* 416 Mich 25, 45; 330 NW2d 823 (1982). Defendant argues that this evidence was necessary to rebut the complainant's trial testimony that he knew nothing about anal sex and his preliminary examination testimony where he denied being a homosexual. We note that the complainant at trial did not deny being a homosexual and the problem of rebuttal on this point never materialized as anticipated by defendant.

Defendant also claims that evidence of the complainant's reputation for, or specific acts of, homosexual conduct, with black male prisoners in particular, should have been admitted as necessary to establish his defense of consent. Defendant argues that such evidence would have made it more probable for the jury to believe that the complainant, a white male prisoner, consented to or solicited the act of sodomy with the defendant, a black male prisoner.

In *People v Williams, supra,* this Court found that proffered evidence on the sexual assault vic-

tim's alleged status as a prostitute was irrelevant to the issues of consent and credibility. 416 Mich 40-46. Like prostitution, the fact that a person is a homosexual, standing alone, has little or no logical relevance between the excluded prior sexual acts evidence and the issues of consent or credibility. Thus, to the extent defendant sought to introduce evidence as to complainant's reputation as a homosexual or to specific acts of homosexuality for the purpose of bolstering his defense of consent, we find such evidence is irrelevant and the trial court properly excluded it.

However, a closer question is presented where such evidence was sought to dispel the assumption that most jurors would believe such an act, especially given the interracial element, is not likely to occur voluntarily. Nevertheless, we do not believe defendant was denied his constitutional right to confrontation since he had a reasonable opportunity to introduce evidence which would have permitted a discriminating appraisal of complainant's possible consent. Evidence of a specific instance of alleged homosexual conduct between complainant and a black male inmate occurring three days before the incident in question was brought out at trial as well as evidence of two stains of seminal fluid which may have been from more than one person. The defendant was not denied his right to confrontation since he was given the opportunity, even though limited in fashion, to expose to the jury the complainant's past homosexual encounter with a prisoner of the same race as defendant as tending to show his consent in this instance.

B. *Paquette*

At trial, defendant sought to introduce evidence concerning complainant's reputation for unchastity, a specific instance of complainant's prior

sexual conduct in which she allegedly met a man in a bar and left with him for consensual sexual relations in a motel, and, finally, evidence of a statement made by complainant that she was not getting enough sexual satisfaction from her husband for the sole purpose to show consent.

We find defendant's offer of proof is inadequate to have even met the minimal threshold of relevancy, a prerequisite to invoking the constitutional standard. As we stated in *Arenda, supra,* the Sixth Amendment right to confrontation requires only that the defendant be permitted to introduce relevant and admissible evidence. 416 Mich 8. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

As a general rule, evidence of a complainant's prior sexual unchastity, in the form of reputation evidence or a specific instance of conduct, has little or no relevancy to the issue of complainant's consent with defendant as to the incident in question. The rationale for this rule was cogently expressed in a recent federal court decision involving a right to confrontation challenge to rule 412 of the Federal Rules of Evidence, the federal counterpart to Michigan's rape-shield statute, as follows:

"The constitutional justification for excluding reputation and opinion evidence rests on a dual premise. First, an accused is not constitutionally entitled to present irrelevant evidence. Second, reputation and opinion concerning a victim's past sexual behavior are not relevant indicators of the likelihood of her consent to a specific sexual act or of her veracity. *Privacy of Rape Victims: Hearings on H. R. 14666 and other Bills Before the Subcomm. on Criminal Justice of the Committee on the Judiciary,* 94th Cong, 2d Sess 14-15 (1976). Indeed,

even before Congress enacted rule 412, the leading federal case on the subject, *United States v Kasto,* 584 F2d 268, 271-272 (CA 8, 1978), stated that in the absence of extraordinary circumstances:

" 'evidence of a rape victim's unchastity, whether in the form of testimony concerning her general reputation or direct or cross-examination testimony concerning specific acts with persons other than the defendant, is ordinarily insufficiently probative either of her general credibility as a witness or of her consent to intercourse with the defendant on the particular occasion . . . to outweigh its highly prejudicial effect.'

"State legislatures and courts have generally reached the same conclusion. We are not prepared to state that extraordinary circumstances will never justify admission of such evidence to preserve a defendant's constitutional rights. The record of the rule 412 hearing in this case, however, discloses no circumstances for deeming that the rule's exclusion of the evidence classified in items 1-5 is unconstitutional." *Doe v United States,* 666 F2d 43, 47-48 (CA 4, 1981).

Therefore, absent extraordinary circumstances,[4] a complainant's reputation for unchastity or specific instances of complainant's past sexual conduct with third persons is ordinarily irrelevant and inadmissible to show consent.

In the present case, there are no extraordinary circumstances disclosed in the record to take this case out of the general rule of inadmissibility. The fact that complainant may have consented to sexual activity at some time in the past with a man

[4] In *United States v Kasto,* 584 F2d 268, 271, fn 2 (CA 8, 1978), the court gave the following examples of circumstances which would enhance the probative value of this evidence:

"Such circumstances might include where the evidence is explanative of a physical fact which is in evidence at trial, such as the presence of semen, pregnancy, or the victim's physical condition indicating intercourse, or where the evidence tends to establish bias, prejudice, or an ulterior motive surrounding the charge of rape. Sexual history might also be relevant where the victim has engaged in a prior pattern of behavior clearly similar to the conduct immediately in issue." (Citations omitted.)

other than the defendant, whom she met in a bar
and accompanied to a motel, is not sufficiently
similar to the facts at hand to be relevant to the
issue of consent. Here, the simultaneous sexual
acts between complainant and two strangers, one
of whom was the defendant, occurred in the cab of
a truck after the strangers had picked up the
complainant on the road near her car which had
run out of gas. Moreover, complainant's alleged
reputation for engaging in consensual sexual rela-
tions in the past, does not tend to prove that she
did so with defendant at the time in question.

We find that the trial court's exclusion of this
proffered evidence of complainant's prior sexual
conduct with persons other than the defendant,
either as reputation or specific instances of con-
duct, did not deprive defendant of his right to
confrontation because this right does not extend to
cross-examination on irrelevant matters.

The remaining proffered evidence concerned the
complainant's statement of her sexual dissatisfac-
tion at home due to the physical condition of her
husband. We agree with Justice KAVANAGH's ob-
servation that this evidence does not fall within
the terms of the rape-shield statute since techni-
cally it is not evidence of prior sexual conduct. The
Court of Appeals correctly found no abuse of the
trial court's discretion in excluding this evidence
on the ground of irrelevancy because the com-
plainant was separated from her husband at the
time of the offense in question.

V

Having examined each of the two cases before us
in light of the constitutional standard set forth
herein, we conclude that the application of the
rape-shield statute by the trial court under the

particular facts in these cases did not violate the defendants' right to confrontation.

Accordingly, in *Hackett,* we reverse the decision of the Court of Appeals and reinstate the defendant's conviction; whereas, in *Paquette,* we affirm the decision of the Court of Appeals.

WILLIAMS, C.J., and RYAN, BRICKLEY, and CAVANAGH, JJ., concurred with BOYLE, J.

KAVANAGH, J.

I

Defendant Charles R. Hackett was convicted of assault with intent to commit sexual penetration, MCL 750.520g(1); MSA 28.788(7)(1). The offense was alleged to have occurred in a barracks bathroom while the defendant and complainant were inmates at Camp Pugsley, a facility operated by the Michigan Department of Corrections. Ricky R. Vanhohenstein testified that at 2 a.m. on August 28, 1979, the defendant sat on the edge of complainant's bunk, pressed a pair of scissors against his neck and ordered him to the bathroom. In a toilet stall, testified the complainant, the defendant compelled complainant to submit to an attempt at anal intercourse. The theory of the defense was that the incident never happened or that, if it did, complainant solicited and consented to the act. The defense argued that defendant was being set up by the complainant in retaliation over an incident involving a picture. Defendant did not testify.

Prior to trial, defense counsel moved to admit evidence of the complainant's reputation for homosexual unchastity and of specific instances of the complainant's sexual conduct at Camp Pugsley.

Defense counsel offered to prove that the complainant, a white person, was a homosexual who enjoyed associations of a sexual nature with black inmates in particular and that he maintained close physical contact with inmates by touching and embracing them. Counsel also offered to prove that complainant traded homosexual favors within the prison for benefits such as marijuana. Such evidence was said to be relevant to the probability that complainant would consent to or solicit sexual contact with defendant. The evidence was also needed, argued defense counsel, to circumvent an assumption that it would be improbable that a white male prisoner would consent to sodomy by a black male prisoner. Lastly, defense counsel argued that evidence of complainant's reputation for homosexual unchastity was admissible for the purpose of impeaching his credibility because of his anticipated testimony that he had not previously engaged in sexual contact with other inmates.

In the second case before the Court, James Paquette and another individual were convicted of criminal sexual conduct in the first-degree, MCL 750.520b; MSA 28.788(2). The transaction giving rise to the charges occurred when the defendant and his friend picked up the complainant on a road near her car, which had run out of gas. The complainant, defendant, and his friend all testified to sexual acts occurring in the cab of a truck. The complainant, however, testified that she was compelled to submit to the sexual acts by physical force and threats of personal injury. The defendant and his friend testified that the complainant initiated the sexual acts and consented.

During trial, the issue was raised whether defense counsel could introduce testimony that the complainant had a reputation for unchastity. He also sought to introduce testimony of what he said

was a circumstance similar to the one for which defendant was on trial, that shortly before the incident alleged, the complainant had met a man in a bar and left with him to enjoy sexual relations that night in a motel. Lastly, counsel wished to introduce testimony that the complainant had made a statement that she had received insufficient sexual attention from her husband. The proffered evidence was argued to be relevant to the probability of the complainant's consent to the sexual acts.

II

In both cases, defense counsels' proffered evidence was excluded by the trial courts under different interpretations of MCL 750.520j(1); MSA 28.788(10)(1). The statute, which is part of the criminal sexual conduct act, 1974 PA 266, MCL 750.520a *et seq.;* MSA 28.788(1) *et seq.,* provides:

"Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

"(a) Evidence of the victim's past sexual conduct with the actor.

"(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease."

The trial court excluded the evidence of reputation and of specific instances of prior conduct in *Hackett* apparently on the grounds of the proscription of MCL 750.520j(1); MSA 28.788(10)(1). The

applicability and constitutionality of MCL 750.520j(1); MSA 28.788(10)(1) and MRE 404(a)(3) were argued by the prosecution and the defense at a hearing on the motion, but the trial court did not state the authority of its ruling. In an unpublished opinion per curiam, the Court of Appeals concluded that exclusion of evidence of the complainant's reputation for unchastity denied the defendant a fair trial. The Court said that evidence should have been admitted on the facts of this case because of the defense theory that defendant was set up and because of one witness' testimony that the defendant was propositioned by the complainant, who denied other homosexual activity. We granted leave to appeal. 417 Mich 1043 (1983).

The trial court in *Paquette* read the statute as affording discretion to admit or exclude the proffered evidence once he determined whether it was more probative than prejudicial. At a hearing outside the presence of the jury, during trial, the court concluded that the proffered evidence was irrelevant to the issue of consent and prejudicial to the prosecution's case. The Court of Appeals affirmed, *People v Paquette*, 114 Mich App 773; 319 NW2d 390 (1982), holding irrelevant as insufficiently similar to the allegations evidence of the complainant's meeting a man in a bar. Evidence of complainant's alleged reputation for unchastity, the Court concluded, had low probative value, outweighed by the state's interest in encouraging the prosecution of rapists and protecting victims from humiliation. Further, evidence of the statement attributed to complainant that she received insufficient sexual attention from her husband was irrelevant because she was separated from her husband at the time the offense was said to have been

committed. We granted leave to appeal. 417 Mich
1041 (1983).

## III

On appeal, the validity of MCL 750.520j(1); MSA
28.788(10)(1) is challenged on constitutional
grounds. The defendants maintain they offered to
introduce relevant evidence, which was prohibited
by the statute, in contravention of their rights to
confrontation under US Const, Am VI, and Const
1963, art 1, § 20. The prosecutors argue that the
evidence excluded by the statute is always logi-
cally or legally irrelevant, and therefore does not
contravene constitutional rights.

As a rule of evidence, the statute has been
permitted life under MRE 101:

"A statutory rule of evidence not in conflict with
these rules or other rules adopted by the Supreme
Court is effective until superseded by rule or decision of
the Supreme Court."

The function of establishing the rules of practice
and procedure for the courts of this state is com-
mitted by the constitution, Const 1963, art 6, § 5,
exclusively to the Supreme Court. See also MCL
600.223(2); MSA 27A.223(2). It is "a function with
which the legislature may not meddle or interfere
save as the Court may acquiesce and adopt for
retention at judicial will." *Perin v Peuler,* 373
Mich 531, 541; 130 NW2d 4 (1964).

In view of our constitutional duty to govern the
practice and procedure of the courts of Michigan,
we have concluded that MCL 750.520j(1); MSA
28.788(10)(1) must give way to a more realistic
accommodation of the rights of defendants in crim-
inal cases. Accordingly, we hold that MRE

404(a)(3) supersedes MCL 750.520j(1); MSA 28.788(10)(1). We believe this will accomplish the salutary goals of the statute without sacrificing the right to present relevant evidence.

MCL 750.520j(1); MSA 28.788(10)(1) absolutely prohibits the admission of evidence of sexual conduct between the victim and any person other than the defendant except to show the source or origin of semen, pregnancy, or disease. The statute applies only to offenses tried under MCL 750.520b-750.520g; MSA 28.788(2)-28.788(7).

Ordinarily, all relevant evidence is admissible. See MRE 402. Evidence is relevant if it has any tendency to make the existence of a fact in issue to the action more or less probable than it would be without the evidence. See MRE 401. Relevant evidence may nonetheless be excluded from trial "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

In support of MCL 750.520j(1); MSA 28.788(10)(1), the plaintiffs contend that the evidence excluded by the statute is usually irrelevant. As we noted in *People v Arenda,* 416 Mich 1, 10; 330 NW2d 814 (1982), the statute represents a "legislative determination that, *in most cases,* such evidence is irrelevant." (Emphasis added.)

There are two problems with this contention which militate against our continued acquiescence in this statute. First, even if in most cases the excluded evidence is irrelevant, the statute excludes it in all cases. Such categorical exclusion is not warranted simply because the excluded evidence is relevant in only a few cases.

Secondly, the relevancy of whole classes of evidence cannot be determined *a priori,* at least

without knowing the purpose for which such evidence is offered. "The relevancy of evidence depends on the issue to be tried." *White v Bailey,* 10 Mich 155 (1862). Not until the issues are framed at trial can it be known whether evidence of prior sexual conduct is relevant, as the Legislature recognized in the statute under consideration. Evidence of prior sexual conduct to show the source or origin of semen, pregnancy, or disease is admissible under the statute, but only if it "is material to a fact at issue in the case" and is more probative than prejudicial.

However, say plaintiffs, even in those cases where the excluded evidence is logically relevant, it is always outweighed by its prejudicial effect, and for that reason is inadmissible.

The plaintiffs' argument reflects a misunderstanding of the inquiry. Relevant evidence may be excluded if its probative value is "substantially outweighed" by its prejudicial effect. MRE 403. Since the relevancy of evidence cannot be determined until the issues are known, the probative value of the evidence *a fortiori* cannot be known until then. Accordingly, it cannot be said categorically that the prejudicial effect of prior sexual conduct evidence always substantially outweighs its probative value.

Moreover, plaintiffs misperceive the nature of the prejudice needed to overwhelm the probative value of evidence. Plaintiffs assert that the admission of evidence of prior sexual conduct deters victims from prosecuting. While that is a significant problem of social policy, it is not the sort of prejudice which weighs against the probative value of evidence.

Since the enactment of MCL 750.520j(1); MSA 28.788(10)(1), the Court has adopted MRE 404(a)(3), which provides:

"Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

\* \* \*

"In a prosecution for criminal sexual conduct, evidence of the victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease."

Under this rule, evidence of a person's prior consensual sexual conduct is not admissible for the purpose of proving that the person consented to sexual conduct on the occasion of the offense charged. Such evidence is admissible, however, if it involved the defendant or if offered for the purpose of showing the source or origin of semen, pregnancy, or disease.

MRE 404(a)(3) is a more sophisticated approach to the question of the admissibility of prior sexual conduct evidence. Unlike the statute, MRE 404(a)(3) focuses on the purpose for which such evidence is offered. The statute simply excludes all evidence of prior sexual conduct with third persons unless offered to show the source or origin of semen, pregnancy, or disease. Moreover, MRE 404(a)(3) has the incidental benefit of correcting the discredited use to which evidence of prior sexual conduct has been most frequently put, which is what aroused the Legislature originally to enact MCL 750.520j(1); MSA 28.788(10)(1).

A rule of evidence which excludes a whole category of evidence on the grounds that some of it may be irrelevant is one which we, as the overseers of the rules of evidence in our courts, would not adopt and cannot accept.

IV

In *Hackett,* the defendant offered to admit evidence of the complainant's prior sexual conduct, in the form of reputation and specific instances of conduct, for several purposes. From the record, it appears that the trial court felt bound by the flat proscription of MCL 750.520j(1); MSA 28.788(10)(1).

Under these circumstances, we are compelled to remand the case for a hearing before the trial court. The court must exercise discretion to determine whether the evidence offered by defendant is admissible under MRE 404(a)(3). If it is, defendant's conviction must be set aside, his sentence must be vacated, and a new trial must be had.

In *Paquette,* defense counsel proffered evidence of the complainant's alleged reputation for unchastity and of a specific instance of prior sexual conduct. Rather than interpreting the statute as absolutely prohibiting the admission of such evidence, the trial court exercised discretion to determine that the evidence was more prejudicial than probative. We are not persuaded that the court abused its discretion. Proffered evidence of a statement attributed to complainant that she received insufficient sexual attention from her husband was viewed in the same light and excluded. Although evidence of the statement was not evidence of prior sexual conduct within the terms of MCL 750.520j(1); MSA 28.788(10)(1), we are not convinced that the trial court abused its discretion in excluding the evidence.

The judgment of the Court of Appeals in *Hackett* should be reversed, and the case should be remanded for further proceedings consistent with this opinion.

The judgment of the Court of Appeals in *Paquette* should be affirmed.

LEVIN, J. *(dissenting).* Defendant Charles R.

Hackett, a black man, was convicted of assault with intent to commit sexual penetration.[1] At the time of the offense, both Hackett and the complainant, a white man, were residents at a facility operated by the Michigan Department of Corrections. The complainant testified that Hackett awakened him one night at 2 a.m., placed a pair of scissors against his throat and ordered him to the barracks bathroom where, in a toilet stall, Hackett attempted an act of anal intercourse.

Hackett did not testify at trial. Several witnesses were called on his behalf, however, to testify in support of his theory that the alleged act never occurred or, if it did, that it was consensual and solicited by the complainant. Expert testimony demonstrated that the rear panel of the complainant's shorts contained the seminal fluid of more than one person. Other defense witnesses testified that it was the complainant who had asked Hackett to accompany him to the barracks bathroom, that the complainant and Hackett had been seen together often and that the complainant and a black inmate had been observed "humping" in the complainant's bunk.

Prior to trial, Hackett filed a written offer of proof that the complainant had an "established reputation as a homosexual among inmates at Camp Pugsley" and that he had "several close associations of a sexual nature" with black inmates. Hackett also offered to prove that the complainant traded homosexual favors for "benefits" such as marijuana. Hackett's written motion for admission of the evidence asserted that it was relevant to show that the complainant would be likely to consent to or solicit sexual contact with Hackett, to rebut the assumption that a white

---

[1] MCL 750.520g(1); MSA 28.788(7)(1).

man would not consent to or solicit sodomy by a black man, and to impeach the complainant's preliminary examination testimony denying that he was a homosexual.

The circuit judge denied Hackett's motion for admission without conducting an *in camera* hearing pursuant to § 520j(2) of the Penal Code.[2] It appears that the circuit judge considered § 520j(1)[3] as an absolute bar to the admission of the proffered evidence. The jury found Hackett guilty of assault with intent to commit sexual penetration. The Court of Appeals reversed and remanded for a new trial.

Defendant James Paquette and a codefendant were convicted of first-degree criminal sexual conduct.[4] The complainant, a married woman who was approximately five months pregnant at the time of the alleged rape, testified that, while driving alone, she ran out of gas on a state highway. Paquette and the codefendant stopped to push the complainant's car to the side of the highway. The two men had an empty gallon jug in their truck and offered to take the complainant to a service station and then return her to her car. She testified that on the way to the service station, the two men could not find ten dollars that they had left in the truck. The men began to accuse her of stealing the ten dollars. After gasoline was dispensed into the truck and the gallon jug, the complainant was not returned to her car; rather, Paquette's codefendant began driving along various roads in the area. Paquette was seated on the passenger side of the cab and the complainant was seated between the two men.

The complainant testified that Paquette, appar-

---

[2] MCL 750.520j(2); MSA 28.788(10)(2).

[3] MCL 750.520j(1); MSA 28.788(10)(1).

[4] MCL 750.520b; MSA 28.788(2).

ently not satisfied that she had not taken the ten dollars, began to "help" her remove her clothing. Then, according to the complainant, Paquette grabbed her head and forced her to perform fellatio. She complied because of threats made upon her and her unborn child. Subsequently, she was forced to perform fellatio on the codefendant and submit to sexual intercourse with both men. She was then allowed to dress and leave the truck. The complainant walked to a nearby house and was permitted to use the telephone. She called relatives who came to pick her up. The police were notified of the incident and the complainant was taken to a hospital for a physical examination.

Defendant Paquette testified at trial. He confirmed that the complainant had engaged in fellatio and sexual intercourse with both men, but testified that such activity was initiated by her. Paquette testified that, after the gasoline was obtained, the complainant directed the codefendant to drive along certain roads in the area. The complainant unzipped Paquette's trousers and commenced an act of fellatio. She did the same to the codefendant and both men subsequently had sexual intercourse with her. Although offered a ride back to her car, the complainant got out of the truck to walk to her uncle's house, which she said was just down the road.

At trial, but out of the presence of the jury, Paquette sought to introduce evidence of the complainant's reputation for unchastity, that she had engaged in consensual sexual relations with a stranger that she had met in a bar, and that she had made a statement to the effect that she was not obtaining sexual satisfaction from her husband. The evidence was offered as relevant on the issue of consent. The circuit judge ruled that the evidence was inadmissible under § 520j. No *in*

*camera* hearing was conducted. The jury found Paquette guilty of first-degree criminal sexual conduct and the Court of Appeals affirmed.

I

The successful prosecution of criminal sexual offenders—and indeed all criminal offenders—is a vital state interest. Rape victim shield laws, such as § 520j, have been justified as a means of protecting victims from harassing cross-examination[5] and embarrassing or humiliating revelation of prior sexual history,[6] thereby encouraging victims to cooperate in the prosecution of offenders. The defendants in the instant cases insist, however, that application of the statute must yield to their fundamental rights to confrontation of opposing witnesses[7] and compulsory process for obtaining witnesses.[8]

A

The exclusion of the evidence proffered in the instant cases cannot be justified as a means of protecting the complaining witnesses from brutal or harassing cross-examination.

In *Hackett,* the defendant's motion for the admission of evidence was introduced and denied before trial. In *Paquette,* the defendant's offer of proof was made out of the presence of the jury.

---

[5] See Berger, *Man's trial, woman's tribulation: Rape cases in the courtroom,* 77 Colum L R 1, 12-13 (1977).

[6] See Tanford & Bocchino, *Rape victim shield laws and the Sixth Amendment,* 128 U Pa L R 544 (1980).

[7] Const 1963, art 1, § 20; US Const, Am VI, applicable to the states under the Fourteenth Amendment, *Pointer v Texas,* 380 US 400; 85 S Ct 1065; 13 L Ed 2d 923 (1965).

[8] Const 1963, art 1, § 20; US Const, Am VI, applicable to the states under the Fourteenth Amendment, *Washington v Texas,* 388 US 14; 87 S Ct 1920; 18 L Ed 2d 1019 (1967).

The defendants in both cases were prepared to prove prior sexual history with the testimony of other witnesses; presentation of evidence was not dependent on cross-examination of the complaining witnesses. Thus a societal interest in protecting complaining witnesses from harassing cross-examination is not implicated in these cases.

B

Neither can the exclusion of the proffered evidence in the instant cases be justified on the ground that it will protect the complaining witnesses from exposure of embarrassing or humiliating prior sexual history to a spouse, relatives, friends, or the general public. The nature of a jury trial is such that when potential evidence is offered, albeit out of the jury's presence, it becomes a matter of public record. The defendant has an absolute right to make an offer of proof and, if the judge refuses an oral offer, the defendant might make a written offer of proof. The court file and transcript are public records that cannot be suppressed from publication by the media.[9] Thus whether offers of proof of prior sexual history become a matter of public notoriety depends on who happens to be in the courtroom and on the media rather than on a rule of law.

II

Generally, all relevant evidence is admissible.[10] Prior sexual history generally is irrelevant. It may be assumed that most persons beyond their early teens are sexually experienced in one form or

[9] See *Globe Newspaper Co v Superior Court,* 457 US 596, 610; 102 S Ct 2613; 73 L Ed 2d 248 (1982).

[10] MRE 402.

another. There is no need to tell a jury that a man or woman beyond a certain age is likely to have had sexual partners and sexual relations. Evidence that demonstrates only prior sexual experience is generally irrelevant and properly excluded.

The question is whether evidence of prior sexual history that shows more than sexual experience should be admissible. The people seek to exclude the evidence in the instant cases not because it is irrelevant or offensive but because the jury may misuse it. If the evidence were truly irrelevant and offensive, the people would probably not be harmed by its admission because the defendant, by offering harassing evidence, would lose the jury; the evidence would "boomerang."

What is the misuse that the prosecution seeks to avoid? It is concerned that the jury in *Paquette* will conclude that this married, pregnant woman is a "loose woman" and, in *Hackett,* that this white man favors homosexual relations with black men and, on that basis, reject the charges of forcible nonconsensual sexual relations. The premise of the argument for exclusion is thus that the jury cannot be trusted not to characterize the complaining witness as a loose woman or consenting homosexual if they hear the evidence of sexual history, and that the jurors will incorrectly *assume* that if the complaining witness consented to sex in those circumstances, they cannot find beyond a reasonable doubt that she or he did not consent to sex with the defendants.

The defendants must fear the same kind of superficial thinking on the part of the jury that the prosecutor fears. The defendants are properly concerned that the jurors will see the complaining witnesses as persons who are not likely to have consented to the sexual acts, not because they are chaste persons—chastity and unchastity being gen-

erally irrelevant and therefore evidence thereof being generally inadmissible—but because, albeit not chaste, the charged sexual behavior is, in the jurors' experience, "aberrant." It is "aberrant" for a married, pregnant woman to be looking for casual sex and it is "aberrant" for a white man to solicit or consent to a sexual relationship with a black man. At least that is what most jurors will think.

Without regard to whether the prosecutor in *Paquette* asked the jury[11] to view the complainant as a married, pregnant woman and to draw the inference that it was improbable that she would be seeking impromptu, casual sexual relations or, in *Hackett,* that a white man does not consent to a homosexual relationship with a black man, the typical juror may so *assume* and draw those inferences. The defendant has at least the same need to have the evidence of prior sexual history admitted to counter juror assumption and characterization of the complaining witnesses as being unlikely to consent to "aberrant" sexual behavior the defen-

---

[11] Prior sexual history is relevant and should be admitted when sexual history is first raised by the prosecution. See Tanford & Bocchino, *Rape victim shield laws and the Sixth Amendment,* fn 6 *supra,* p 583. If the prosecution offers evidence of the complainant's chastity to show the improbability of consent, the defendant should be permitted to respond with competent and probative evidence.

There is a similar right to respond where the jury may infer improbability of consent apart from testimony or prosecutorial comment. *Cf. People v Seaman,* 107 Mich 348, 358-359; 65 NW 203 (1895) (similar acts of defendant held admissible to show guilty knowledge and intent):

"Upon principle and authority, it is clear that where a felonious intent is an essential ingredient of the crime charged, and the act done is claimed to have been innocently or accidentally done, or by mistake, or when the result is claimed to have followed an act lawfully done for a legitimate purpose, *or where there is room for such an inference,* it is proper to characterize the act by proof of other like acts producing the same result, as tending to show guilty knowledge, and the intent or purpose with which the particular act was done, *and to rebut the presumption that might otherwise obtain."* (Emphasis supplied.)

dants claim was consented to as the people may
have need to exclude such evidence to avoid the
jury assuming and concluding that because the
complainant has engaged in "aberrant" consensual
sexual behavior consent was given in the instant
case, or at least that it cannot be said beyond a
reasonable doubt that consent was not given.

## III

The procedures in the instant cases violated the
defendants' rights to confrontation and compulsory
process and denied them fair trials and due pro-
cess of law.

In *Hackett,* the proffered evidence was relevant
to rebut jury assumption and inference that a
white man would not solicit or consent to an act of
sodomy by a black man.[12] The decision of the Court
of Appeals reversing and remanding for a new
trial should be affirmed.

In *Paquette,* the evidence was relevant to rebut
jury assumption and inference that a married,
pregnant woman does not seek to engage in casual
sexual relations. Also, the proffered evidence of
the complainant's statement that she was not
obtaining sexual satisfaction from her husband is
not evidence of prior sexual conduct and is not
within the terms of the rape victim shield law.
The evidence of the statement is relevant as tend-
ing to make it more probable that the complainant
consented to sexual activity than it would be

[12] The Court declares that since the defendant was permitted to
present some evidence of a past homosexual encounter between the
complainant and a black prisoner, the right to confrontation was not
denied. It is not proper, however, to exclude relevant evidence be-
cause other evidence tending toward the same factual conclusion has
been admitted, unless the evidence is excluded as "needless presenta-
tion of cumulative evidence." MRE 403. Because of the reasonable
doubt standard, evidence tending to rebut an element—non-consent in
this case—of a charged offense will rarely be "needless" or "cumula-
tive."

without such evidence.[13] The decision of the Court of Appeals should be reversed and the cause remanded for a new trial.

CAVANAGH, J., took no part in the decision of *Paquette.*

---

13 MRE 401.