*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 15, 2024

Plaintiff-Appellant,

v

No. 368411
Newaygo Circuit Court
LC No. 2023-013163-FC

AIDEN MICHAEL WYSOCKI,

Defendant-Appellee.

Before: SWARTZLE, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM.

In this interlocutory appeal, defendant was bound over after a preliminary examination on five counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) and MCL 750.520b(2)(b), and two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) and MCL 750.520c(2)(b). The trial court subsequently granted defendant's motion to admit evidence involving a separate incident, purportedly to show that the complainant had a motive to lie about the allegations against defendant. The prosecutor sought interlocutory review on this evidentiary issue, which this Court granted. Because the record is not sufficient for our appellate review, the Court vacates and remands for further proceedings.

In July 2017, when the complainant, MG, was 11 years old, she attended an overnight camp where defendant was a counselor. Three years later, in September 2020, MG's mother found text messages on MG's phone referring to MG being sexually assaulted at the camp. MG then disclosed that defendant had sexually assaulted her multiple times. MG's mother reported the information to the police. The trial court held a preliminary examination, after which the case was bound over to the circuit court.

Before trial, defense counsel obtained a copy of a Newaygo County Sheriff's Office report about an incident that purportedly occurred in March 2020, when MG was 14 years old. According to the report, an 18-year-old man, who claimed to be 16 years old, picked up MG at her home around 1:00 a.m. The two kissed, and then the man started to unzip MG's pants, but MG stopped him and ended the encounter. The man immediately complied and was going to drive her home, but MG's father arrived and took her home. MG's mother called the sheriff's office, and MG

reported to the deputy sheriff that she went with the man because she had not "been getting a lot of attention from her father." The report elaborated on this, "She stated her father tells her he loves her but she doesn't even feel like he actually does. She stated she just wanted to get attention from her dad and she didn't care whether it was good or bad."

Defense counsel moved to admit the report as an exception to Michigan's rape-shield law, MCL 750.520j. Counsel argued that the conduct described in the report was arguably not covered by the law, but that even if it was, the conduct showed that MG had a motive to lie, i.e., to get attention from her father. The trial court held a hearing on the motion, but did not hold an *in camera* review of the evidence, stating that both parties were in possession of the report. The trial court agreed with the prosecutor that the conduct was covered by the rape-shield law, but agreed with defense counsel that it was "highly relevant . . . as to motive." The trial court granted defendant's motion.

The prosecutor appealed.

This Court reviews for an abuse of discretion a trial court's determination whether to admit evidence. See *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). The trial court abuses its discretion when its decision falls outside the range of principled outcomes. See *People v Breeding*, 284 Mich App 471, 479; 772 NW2d 810 (2009). This Court reviews de novo question of law, including "whether a rule of evidence or statute precludes admissibility of the evidence." *Lukity*, 460 Mich at 488. Further, this Court reviews de novo the constitutional question of whether a defendant has been denied the right to present a defense. See *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).

For several reasons, the record before this Court is not sufficient for appellate review. First, the trial court did not explain why it found that the rape-shield law applies to the conduct described in the report. No one was charged or convicted of any crime arising from the conduct described in the report. With that said, while the conduct described in the report was not particularly extensive or invasive, the male was an adult, MG was a minor, and kissing and touching in an intimate area of the body might well qualify as "sexual conduct" for purposes of the rape-shield law. Cf. *People v Owens*, unpublished per curiam opinion of the Court of Appeals, issued January 13, 2004 (Docket No. 243888), p 2 (concluding that kissing and touching buttocks qualified as "sexual conduct").[1] Given the scant record before this Court, it is prudent to remand for the trial court to make findings on this preliminary question.

Second, even assuming arguendo that the rape-shield law applies, the record on appeal is likewise not sufficient for this Court to determine whether the Confrontation Clause requires admission of evidence of the alleged March 2020 incident. Generally speaking, the rape-shield law prohibits the introduction of evidence of a victim's sexual activity unrelated to the charged incident, subject to some exceptions. The statute provides that evidence of a victim's sexual

---

[1] Although unpublished cases are not binding on this Court, they may be persuasive. See *People v Daniels*, 311 Mich App 257, 268 n 4; 874 NW2d 732 (2015).

conduct, including opinion and reputation evidence about the victim's conduct, is not admissible unless:

> the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> > (a) Evidence of the victim's past sexual conduct with the actor.
> >
> > (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

Neither (a) nor (b) applies to the alleged March 2020 incident, and therefore evidence of that incident might well be subject to exclusion under the rape-shield law. This is not uncommon, as our Supreme Court has recognized—"in the vast majority of cases, evidence of a rape victim's prior sexual conduct with others, and sexual reputation, when offered to prove that the conduct at issue was consensual or for general impeachment is inadmissible." *People v Hackett*, 421 Mich 338, 347-348; 365 NW2d 120 (1984).

The constitutional right of confrontation, however, will sometimes require the admissibility of evidence otherwise subject to exclusion under the rape-shield law. "[I]n certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation." *Id.* at 348. Such evidence may, for example, "be probative of a complainant's ulterior motive for making a false charge." *Id.*

To determine whether evidence of sexual activity should be admitted, the rape-shield law sets forth a two-part analysis that trial courts are required to follow. MCL 750.520j(2). Our Supreme Court has extended this two-part analysis beyond the statutory context and directly to the constitutional right of confrontation. *Hackett*, 421 Mich at 349-350. When determining whether such evidence is admissible—whether as an exception to the rape-shield law itself, or as required by the constitutional right of confrontation—the trial court must: (1) evaluate the defendant's offer of proof for a "sufficient showing of relevancy"; and then (2) order "an *in camera* evidentiary hearing to determine the admissibility of such evidence." *Id.* at 350. This two-part process serves both to streamline trial-court proceedings (not every proffer of proof warrants an evidentiary hearing), and to create a sufficient record for appellate review. See *id.*

On appeal, defendant argues that the evidence involving the 18-year-old man is relevant to MG's motive to make a false allegation against defendant. Other than concluding that the report is "highly relevant," the trial court made no findings with regard to relevance. Based on a review of the report alone, it is unclear how probative this incident is to MG's motive to lie about the charge against defendant. It appears that the man and MG kissed, and the man tried to unzip MG's pants, but then MG ended the conduct then and there. There are no allegations that she lied about her age with the man or that she lied to her parents about the episode. She might have snuck out of her residence, and this might be some evidence of her willingness to break a rule or, more generally, commit a "wrong" of some type, to get attention from her father.

By the same token, based on a review of the report alone, there appears to be little that is inflammatory or prejudicial about this episode as it pertains to MG. It appears that, when she was

14 years old, she kissed someone who she thought was only two years older than her, and she ended the encounter as soon as she became uncomfortable with it. A limited inquiry about MG sneaking out to meet someone and stating that she wanted her father's attention would not subject her to the type of public harassment or humiliation that could otherwise deter a person from reporting an incident of sexual assault. See *Hackett*, 421 Mich at 345, 350.

Compounding the uncertainty, it is not clear to this Court how the report would be used at trial. Setting aside the matters of the rape-shield law, Confrontation Clause, relevancy, and prejudice, there remains the matter of hearsay. Ordinarily, a police report is inadmissible hearsay under MRE 803. See *In re Forfeiture of a Quantity of Marijuana*, 291 Mich App 243, 254; 805 NW2d 217 (2011); but see *People v McDaniel*, 469 Mich 409, 413; 670 NW2d 659 (2003) (holding, pre-*Crawford*, that MRE 803 "allows admission of routine police reports, even though they are hearsay, if those reports are made in a setting that is not adversarial to the defendant"). If the report is to be used as substantive evidence and not just impeachment, then it remains for the trial court to set forth the ground for such use. This leads to the third and final hurdle to appellate review, the lack of an *in camera* hearing.

Although neither party has raised on appeal the matter of an *in camera* review, our Supreme Court has made clear that this is a mandatory step in the two-step analysis. In *People v Butler*, 513 Mich 24, 32; 6 NW3d 54 (2024), our Supreme Court held "that the trial court erred by failing to conduct an *in camera* evidentiary hearing before granting admission of the evidence." The Court explained that "[o]nce a sufficient offer of proof is made, the *in camera* evidentiary hearing is not optional." *Id*. Among other reasons, an *in camera* evidentiary hearing can serve as the basis for the trial court to establish a sufficient record for appellate review of its evidentiary ruling.

We recognize that there might be more to the story than what this appellate record shows today. Accordingly, rather than affirm or reverse the trial court's decision, this Court will vacate that decision and remand for further proceedings. This will provide the parties and the trial court with an opportunity to revisit the matter and develop a sufficient record for appellate review on the issues identified here and any other pertinent issues involving introduction of evidence about the March 2020 incident.

Vacated and remanded for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Adrienne N. Young

-4-

# Court of Appeals, State of Michigan

# ORDER

PEOPLE OF MI V AIDEN MICHAEL WYSOCKI

Docket No.    368411

LC No.        2023-013163-FC

Brock A. Swartzle
Presiding Judge

Kirsten Frank Kelly

Adrienne N. Young
Judges

For the reasons stated in the opinion issued with this order, we REMAND this case for further proceedings. We retain jurisdiction. After the remand proceedings conclude, we will review the decisions that the trial court made during those proceedings and consider any remaining issues in this appeal. Any challenges to the trial court's decisions on remand must be raised in this appeal. Therefore, the parties and the trial court must not initiate a new appeal from an order entered on remand within the scope of this appeal. The Clerk of the Court is directed to reject the initiation of a new appeal from such an order.

Appellant must initiate the proceedings on remand within 21 days of the Clerk's certification of this order, and the trial court must prioritize this matter until the proceedings are concluded. As stated in the accompanying opinion, because the record is not sufficient for our appellate review, the Court vacates and remands for further proceedings. The proceedings on remand are limited to this issue.

The parties must serve copies of their filings in the trial court on this Court. Appellant must file with this Court copies of all orders entered on remand within seven days of entry.

Appellant must ensure the transcript of all proceedings on remand is filed in the trial court and this Court within 21 days after completion of the proceedings.

Appellant may file a supplemental brief addressing issues resulting from the remand proceedings within 21 days after the entry of the trial court's order deciding the matter or the filing of the transcript of the remand proceedings in the trial court, whichever is later. If appellant does not file a supplemental brief, appellee may file a supplemental brief within 21 days after appellant's time for filing has run. A responsive brief may be filed within 14 days of service of the supplemental brief.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

August 15, 2024
Date

_____
Chief Clerk